

FILED

10 DEC 27 AM 11: 10

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY·

DEPUTY

1  BRIGGS LAW CORPORATION [FILE: 1190.03]
   Cory J. Briggs (State Bar no. 176284)
2  Mekaela M. Gladden (State Bar no. 253673)
   99 East "C" Street, Suite 111
3  Upland, CA 91786
   Telephone: 909-949-7115
4  Facsimile: 909-949-7121

5  Attorneys for Plaintiffs La Cuna de Aztlan Sacred Sites
      Protection Circle Advisory Committee, CAlifornians for
6  Renewable Energy, Alfredo Acosta Figueroa, Phillip Smith,
      Patricia Figueroa, Ronald Van Fleet, and Catherine Ohrin-Greipp

7

8                 UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA



'10 CV 2 66 4 WQH      WVG

10  ────────────────────────────
    LA CUNA DE AZTLAN SACRED SITES )   CASE NO. _____
11  PROTECTION  CIRCLE  ADVISORY )
    COMMITTEE;  CALIFORNIANS  FOR )   COMPLAINT FOR DECLARATORY,
12  RENEWABLE  ENERGY;  ALFREDO )   INJUNCTIVE,  AND  MANDAMUS
    ACOSTA FIGUEROA; PHILLIP SMITH; )   R E L I E F   U N D E R   T H E
13  PATRICIA  FIGUEROA;  RONALD  VAN )   ADMINISTRATIVE  PROCEDURES
    FLEET; and CATHERINE OHRIN-GREIPP, )   ACT, THE NATIONAL HISTORIC
14                                   )   PRESERVATION  ACT,  THE
                 Plaintiffs,          )   NATIONAL  ENVIRONMENTAL
15                                   )   POLICY ACT, THE FEDERAL LAND
        vs.                          )   POLICY AND MANAGEMENT ACT,
16                                   )   AND  THE  NATIVE  AMERICAN
    UNITED STATES DEPARTMENT OF THE )   GRAVES  PROTECTION  AND
17  INTERIOR; KEN SALAZAR, in the official )   REPATRIATION ACT
    capacity of Secretary of the United States )
18  Department of the Interior; UNITED STATES )
    BUREAU  OF  LAND  MANAGEMENT; )
19  ROBERT ABBEY, in the official capacity of )
    Director of the United States Bureau of Land )
20  Management; TERI RAML, in the official )
    capacity of District Manager of the California )
21  Desert District of the United States Bureau of )
    Land Management; MARGARET GOODRO, in )
22  the official capacity of Field Manager of the El )
    Centro Field Office of the United States Bureau )
23  of Land Management; JOHN KALISH, in the )
    official capacity of Field Manager of the Palm )
24  Spring South Coast Field Office of the United )
    States Bureau of Land Management; RUSTY )
25  LEE, in the official capacity of Field Manager )
    of the Needles Field Office of the United States )
26  Bureau of Land Management; and ROXIE )
    TROST, in the official capacity of Field )
27  Manager of the Barstow Field Office of the )
    United States Bureau of Land Management, )
28                                   )
                 Defendants.          )
    ────────────────────────────



1    Plaintiffs LA CUNA DE AZTLAN SACRED SITES PROTECTION CIRCLE

2  ADVISORY COMMITTEE, CALIFORNIANS FOR RENEWABLE ENERGY, ALFREDO

3  ACOSTA FIGUEROA, PHILLIP SMITH, PATRICIA FIGUEROA, RONALD VAN FLEET,

4  and CATHERINE OHRIN-GREIPP allege as follows:

5                                    **Parties**

6    1.    Plaintiff La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee

7  ("LA CUNA") is a non-profit, 501(c)(3) organization and a party to that certain *Amendment No.*

8  *1 to Memorandum of Understanding Between United States Department of the Interior Bureau*

9  *of Land Management and the Southern Low Desert Resource Conservation and Development*

10  *Council.* LA CUNA is comprised of 15 indigenous and culturally aware individuals who are

11  dedicated to physically protecting the Blythe Giant Intaglios, other geoglyphs, and several

12  hundred sacred sites that are located along the Colorado River from Needles, California, to

13  Yuma, Arizona. (A true and correct copy of *Amendment No. 1* is attached to this pleading as

14  Exhibit "A.")

15    2.    Plaintiff CAlifornians for Renewable Energy is a non-profit organization formed

16  to promote public education concerning the responsible development of renewable energy and

17  in the preservation of and respect for Native American culture.

18    3.    Plaintiffs Alfredo Acosta Figueroa, Phillip Smith, Patricia Figueroa, Ronald Van

19  Fleet. and Catherine Ohrin-Greipp are individuals who reside in the areas affecting by the

20  actions challenged in this lawsuit and have an interest in the responsible development of

21  renewable energy and in the preservation of and respect for Native American culture.

22    4.    The United States Department of the Interior and the United States Bureau of

23  Land Management are agencies or instrumentalities of the United States.

24    5.    The following Defendants are being sued in their official capacities: Ken Salazar,

25  in the official capacity of Secretary of the United States Department of the Interior; Robert

26  Abbey, in the official capacity of Director of the United States Bureau of Land Management;

27  Teri Raml, in the official capacity of District Manager of the California Desert District of the

28  United States Bureau of Land Management; Margaret Goodro, in the official capacity of Field

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.                 Page 2

1  Manager of the El Centro Field Office of the United States Bureau of Land Management; John
2  Kalish, in the official capacity of Field Manager of the Palm Spring South Coast Field Office
3  of the United States Bureau of Land Management; Rusty Lee, in the official capacity of Field
4  Manager of the Needles Field Office of the United States Bureau of Land Management; and
5  Roxie Trost, in the official capacity of Field Manager of the Barstow Field Office of the United
6  States Bureau of Land Management.

7                                    **Background Information**

8        6.      Generally speaking, this lawsuit challenges Defendants' actions in connection
9  with six solar-electricity generation projects taking place on federal (public) land: namely,
10  *Ivanpah Solar Electric Generating System Project and Associated Amendment to the California*
11  *Desert Conservation Area Plan* ("Ivanpah Project"), approximately 3,472 acres in size; *Genesis*
12  *Solar Energy Project and Amendment to the California Desert Conservation Area Plan*
13  ("Genesis Project"), approximately 1,950 acres in size; *Imperial Valley Solar Project and*
14  *Amendment to the California Desert Conservation Area Land Use Management Plan* ("Imperial
15  Project"), approximately 6,360 acres in size; *Chevron Energy Solutions Lucerne Valley Solar*
16  *Project and Amendment to the California Desert Conservation Area Plan* ("Chevron Project"),
17  approximately 422 acres in size; *Calico Solar Project and Amendment to the California Desert*
18  *Conservation Area Land Use Management Plan* ("Calico Project"), approximately 4,613 acres
19  in size; and *Blythe Solar Power Project and Amendment to the California Desert Conservation*
20  *Area Plan* ("Blythe Project"), approximately 7,025 acres in size. The records of decision
21  adopted by and the approvals given by Defendants for each of the challenged projects
22  (collectively, "Projects") are as follows:

23            A.      For the Ivanpah Project, Defendants have (among other things) approved
24  an amendment to the California Desert Conservation Area Plan ("CDCA Plan") to include the
25  Ivanpah Project as an approved power generation location under the Energy Production and
26  Utility Corridors Element of the CDCA Plan; and granted four right-of-way authorizations.[1]

27  _____

28  [1]  The right-of-way authorizations are for the Construction Logistics site (CACA-49502) to Solar
Partners I, II, and VIII, LLC; for the Ivanpah 1 site (CACA-49504) to Solar Partners II, LLC; for
Ivanpah 2 site (CACA-48668) to Solar Partners I, LLC; and for Ivanpah 3 site (CACA-49503) to Solar

B.     For the Genesis Project, Defendants have (among other things) approved an amendment to the CDCA Plan to include the Genesis Project as an approved power generation location under the Energy Production and Utility Corridors Element of the CDCA Plan; and granted a right-of-way authorization.

C.     For the Imperial Project, Defendants have (among other things) approved an amendment to the CDCA Plan to include the Imperial Project as an approved power generation location under the Energy Production and Utility Corridors Element of the CDCA Plan; and granted a right-of-way authorization.

D.     For the Chevron Project, Defendants have (among other things) approved an amendment to the CDCA Plan to include the Chevron Project as an approved power generation location under the Energy Production and Utility Corridors Element of the CDCA Plan; and granted a right-of-way authorization.

E.     For the Calico Project, Defendants have (among other things) approved an amendment to the CDCA Plan to include the Calico Project as an approved power generation location under the Energy Production and Utility Corridors Element of the CDCA Plan; and granted a right-of-way authorization.

F.     For the Blythe Project, Defendants have (among other things) approved an amendment to the CDCA Plan to include the Blythe Project as an approved power generation location under the Energy Production and Utility Corridors Element of the CDCA Plan; and granted a right-of-way authorization.

7.     Plaintiffs challenge the Projects on a variety of grounds.  By way of example and not limitation:

A.     For each of the Projects, Defendants failed to properly engage in the consultations required for the Project under the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470 *et seq.*

B.     For each of the Projects, Defendants failed to conduct an adequate analysis of the cumulative impacts, failed to prepare a programmatic environmental impact statement,

Partners VIII, LLC,

1  failed to adequately identify and evaluate the significance of the affected cultural environment,

2  and failed to conduct an adequate analysis of alternatives to the Projects under the National

3  Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*

4         C.     For the Projects collectively, Defendants failed to prepare a programmatic

5  environmental impact statement for the broad major federal action contemplated by the Projects,

6  in violation of NEPA. In a presentation delivered at Defendants' National Land Use Planning

7  Conference in 2009, Defendants announced publicly that they were in the process of preparing

8  a programmatic statement covering the Projects (and other solar-electricity generation projects).

9  It turns out, however, that Defendants failed to complete the programmatic statement before

10  approving the Projects. (A true and correct copy of the presentation is attached to this pleading

11  as Exhibit "B.")

12         D.     For each of the Projects, Defendants violated the Federal Land Policy and

13  Management Act of 1976 ("FLPMA"), 43 U.S.C. § 1701 *et seq.*, by authorizing solar-electricity

14  generation activities on lands designated in the CDCA Plan as Class L (Limited Use) lands even

15  though such activities are permitted under the CDCA Plan only on Class M (Moderate Use) or

16  Class I (Intensive Use) lands, and by allowing the permanent impairment of the lands affected

17  by the Projects and allow unnecessary or undue degradation on these lands.

18         E.     Defendants' approval of the Projects will result in the intentional

19  excavation, disposal, or other removal of Native American cultural items (including human

20  remains) known to be or strongly suspected of being on the Projects' sites, in violation of the

21  Native American Graves Protection and Repatriation Act ("NAGPRA"), 25 U.S.C. § 3001 *et*

22  *seq.*

23                **Jurisdiction, Venue, and Exhaustion of Remedies**

24         8.     This Court has jurisdiction over this proceeding pursuant to Sections 1331 and

25  1361 of Title 28 of the U.S. Code because this pleading alleges violations of federal law and

26  seeks to compel Defendants to perform duties owed to Plaintiff, its members, and other

27  members of the public. The Court also has jurisdiction over this proceeding pursuant to Section

28  551 *et seq.* of Title 5 of the U.S. Code, commonly known as the Administrative Procedure Act

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.          Page 5

1  ("APA"), because the pleading seeks judicial review of actions taken by one or more agencies

2  or officers of the United States.

3       9.    Venue is proper in this Court under Section 1391(e) of Title 28 of the U.S. Code,

4  because (*i*) Defendants are either officers, employees, or agencies of the United States and/or

5  (*ii*) both a substantial part of the events or omissions giving rise to this proceeding were

6  committed in this judicial district and a substantial part of the property at issue in this

7  proceeding is located in this judicial district.

8       10.   Plaintiffs have satisfied each and every exhaustion-of-remedies requirement that

9  must be satisfied in order to maintain this proceeding. Alternatively, no exhaustion-of-remedies

10  requirement may be applied to Plaintiffs.

11       11.   Plaintiffs have no plain, speedy, adequate remedy in the ordinary course of law

12  since Plaintiffs, their respective members, and other members of the public will suffer

13  irreparable harm as a result of Defendants' violations of federal law as alleged in this pleading.

14  Defendants' violations rest on the failure to satisfy a clear, present, ministerial duty to act in

15  accordance with federal law.

16       12.   Plaintiffs have a beneficial right and interest in Defendants' fulfillment of all their

17  legal duties, as alleged in this pleading.

18                           **FIRST CLAIM:**
   **Violation of National Historic Preservation Act--Ivanpah Project**

19              **(Against All Defendants except Kalish, Goodro, and Trost)**

20       13.   Paragraphs 1 through 12 are fully incorporated into this paragraph.

21       14.   NHPA Section 101(d)(6)(B) provides as follows: "(A) Properties of traditional

22  religious and cultural importance to an Indian tribe or Native Hawaiian organization may be

23  determined to be eligible for inclusion on the National Register.  (B) In carrying out its

24  responsibilities under section 106 of this Act, a Federal agency shall consult with any Indian

25  tribe or Native Hawaiian organization that attaches religious and cultural significance to

26  properties described in subparagraph (A)." NHPA Section 106 provides as follows: "The head

27  of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally

28  assisted undertaking in any State and the head of any Federal department or independent agency

1 having authority to license any undertaking shall, prior to the approval of the expenditure of any
2 Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take
3 into account the effect of the undertaking on any district, site, building, structure, or object that
4 is included in or eligible for inclusion in the National Register.  The head of any such Federal
5 agency shall afford the Advisory Council on Historic Preservation established under Title II of
6 this Act a reasonable opportunity to comment with regard to such undertaking."

7      15.    Plaintiffs, both separately and collectively, attach religious and cultural
8 significance to the federal (public) land that will be affected by the Ivanpah Project.  This land
9 has traditional religious and cultural importance to Indian tribes and to Plaintiffs.  Consequently,
10 Plaintiffs will be seriously harmed by Defendants' failure to comply with NHPA.

11      16.    Under *Amendment No. 1* (Exhibit "A"), Defendants were required to perform the
12 NHPA-prescribed consultations with Plaintiff LA CUNA.  Even in the absence of *Amendment*
13 *No. 1*, Defendants were required to perform the NHPA-prescribed consultations for the benefit
14 of Plaintiffs (among others).

15      17.    Defendants failed to perform the NHPA-prescribed consultations for the Ivanpah
16 Project.  Their failure in this regard was contrary to NHPA and arbitrary, capricious, an abuse
17 of discretion, or otherwise not in accordance with law as required by the APA.

18      18.    Plaintiffs, their respective members, and other members of the public have been
19 harmed as a result of Defendants' violations of NHPA and the APA because they have been
20 denied the benefits and protections provided by compliance with those laws.  By way of
21 example and without limitation, Plaintiff, its members, the public, and the decision-makers who
22 approved and are carrying out the Ivanpah Project were not fully informed about the traditional
23 religious and cultural importance attached by Plaintiffs and Indian tribes to the federal (public)
24 land that will be affected by the Ivanpah Project.

25           **SECOND CLAIM:**
**Violation of National Environmental Policy Act--Ivanpah Project**
26 **(Against All Defendants except Kalish, Goodro, and Trost)**

27      19.    Paragraphs 1 through 18 are fully incorporated into this paragraph.

28

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.       Page 7

1    20.    NEPA requires every federal agency to prepare an environmental impact

2    statement ("EIS") for every major action significantly affecting the quality of the human

3    environment that the agency proposes to approve or carry out.  In general, the EIS must

4    adequately address (*i*) the proposed action's environmental impact, (*ii*) any adverse

5    environmental effects that cannot be avoided if the proposed action is implemented, (*iii*)

6    alternatives to the proposed action, (*iv*) the relationship between local short-term uses of the

7    environment and the maintenance and enhancement of long-term productivity, (*v*) any

8    irreversible and irretrievable commitments of resources that would be involved in the proposed

9    action if implemented, (*vi*) mitigation measures for the proposed action, and (*vii*) cumulative

10    impacts for the proposed action.

11    21.    Defendants have not prepared an adequate EIS for the Ivanpah Project even

12    though it is a major action proposed to be approved and carried out by at least one federal

13    agency and has the potential to affect the quality of the human environment, including but not

14    limited to the environment in the California Desert Conservation Area.

15    22.    Defendants' failure to prepare an adequate EIS for the Ivanpah Project was

16    contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in

17    accordance with law as required by the APA.

18    23.    Plaintiffs, their respective members, and other members of the public have been

19    harmed as a result of Defendants' violations of NEPA and the APA because they have been

20    denied the benefits and protections provided by compliance with those laws.  By way of

21    example and without limitation, Plaintiff, its members, the public, and the decision-makers who

22    approved and are carrying out the Project were not fully informed about the impacts of,

23    mitigation measures for, and alternatives to the Project prior to the decision to approve and carry

24    out the Project.

**THIRD CLAIM:**
**Violation of National Environmental Policy Act--Ivanpah Project**
**(Against All Defendants except Kalish, Goodro, and Trost)**

27    24.    Paragraphs 1 through 23 are fully incorporated into this paragraph.

28

25. NEPA (under *Kleppe v. Sierra Club*, 427 U.S. 390 (1976)) requires the environmental consequences of several proposals that will have cumulative or synergistic environmental impacts upon a region to be considered together in a programmatic EIS. Section 1502.4(b) of Title 40 of the Code of Federal Regulations provides that federal agencies "shall prepare statements on broad actions so that they are relevant to policy and are timed to coincide with meaningful points in agency planning and decisionmaking."

26. Each of the Projects is a major federal action, and together they constitute broad action by Defendants.

27. Defendants did not prepare a programmatic EIS for the Projects.

28. With regard to the Ivanpah Project, Defendants' failure to prepare a programmatic EIS for the Projects was contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

29. Plaintiffs, their respective members, and other members of the public have been harmed as a result of Defendants' violations of NEPA and the APA because they have been denied the benefits and protections provided by compliance with those laws. By way of example and without limitation, Plaintiff, its members, the public, and the decision-makers who approved and are carrying out the Project were not fully informed about the programmatic impacts of, mitigation measures for, and alternatives to the Projects prior to the decision to approve and carry out the Ivanpah Project.

**FOURTH CLAIM:**
**Violation of Federal Land Policy and Management Act--Ivanpah Project**
**(Against All Defendants except Kalish, Goodro, and Trost)**

30. Paragraphs 1 through 29 are fully incorporated into this paragraph.

31. FLPMA Section 302(b) provides as follows: "In managing the public lands, the Secretary shall, subject to this Act and other applicable law and under such terms and conditions as are consistent with such law, regulate, through easements, permits, leases, licenses, published rules, or other instruments as the Secretary deems appropriate, the use, occupancy, and development of the public lands, including, but not limited to, long-term leases to permit individuals to utilize public lands for habitation, cultivation, and the development of small trade

1  or manufacturing concerns: *Provided*, That unless otherwise provided for by law, the Secretary

2  may permit Federal departments and agencies to use, occupy, and develop public lands only

3  through rights-of-way under section 507 of this Act, withdrawals under section 204 of this Act,

4  and, where the proposed use and development are similar or closely related to the programs of

5  the Secretary for the public lands involved, cooperative agreements under subsection (b) of

6  section 307 of this Act: *Provided further*, That nothing in this Act shall be construed as

7  authorizing the Secretary concerned to require Federal permits to hunt and fish on public lands

8  or on lands in the National Forest System and adjacent waters or as enlarging or diminishing

9  the responsibility and authority of the States for management of fish and resident wildlife.

10  However, the Secretary concerned may designate areas of public land and of lands in the

11  National Forest System where, and establish periods when, no hunting or fishing will be

12  permitted for reasons of public safety, administration, or compliance with provisions of

13  applicable law.  Except in emergencies, any regulations of the Secretary concerned relating to

14  hunting and fishing pursuant to this section shall be put into effect only after consultation with

15  the appropriate State fish and game department. Nothing in this Act shall modify or change any

16  provision of Federal law relating to migratory birds or to endangered or threatened species.

17  Except as provided in section 314, section 603, and subsection (f) of section 601 of this Act and

18  in the last sentence of this paragraph, no provision of this section or any other section of this Act

19  shall in any way amend the Mining Law of 1872 or impair the rights of any locators or claims

20  under that Act, including, but not limited to, rights of ingress and egress.  In managing the

21  public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent

22  unnecessary or undue degradation of the lands."

23       32.    FLPMA Section 601(d) provides as follows: "The Secretary [of the Interior], in

24  accordance with section 202 of this Act, shall prepare and implement a comprehensive, long-

25  range plan for the management, use, development, and protection of the public lands within the

26  California Desert Conservation Area. Such plan shall take into account the principles of

27  multiple use and sustained yield in providing for resource use and development, including, but

28  not limited to, maintenance of environmental quality, rights-of-way, and mineral development.

1   Such plan shall be completed and implementation there-of initiated on or before September 30,

2   1980."

3       .33.    FLPMA Section 601(f) provides as follows: "Subject to valid existing rights,

4   nothing in this Act shall affect the applicability of the United States mining laws on the public

5   lands within the California Desert Conservation Area, except that all mining claims located on

6   public lands within the California Desert Conservation Area shall be subject to such reasonable

7   regulations as the Secretary may prescribe to effectuate the purposes of this section. Any patent

8   issued on any such mining claim shall recite this limitation and continue to be subject to such

9   regulations. Such regulations shall provide for such measures as may be reason-able to protect

10   the scenic, scientific, and environmental values of the public lands of the California Desert

11   Conservation Area against undue impairment, and to assure against pollution of the streams and

12   waters within the California Desert Conservation Area."

13       34.    Defendants have not complied with FLPMA as it relates to the Ivanpah Project

14   even though it is located on federal (public) land and is within the California Desert

15   Conservation Area and subject to the CDCA Plan.

16       35.    Defendants' failure to comply with the CDCA Plan and take all action necessary

17   to prevent unnecessary or undue degradation of the federal (public) land affected when they

18   approved the Ivanpah Project was contrary to FLPMA and arbitrary, capricious, an abuse of

19   discretion, or otherwise not in accordance with law as required by the APA.

20       36.    Plaintiffs, their respective members, and other members of the public have been

21   harmed as a result of Defendants' violations of FLPMA and the APA because they have been

22   denied the benefits and protections provided by compliance with those laws. By way of

23   example and without limitation, Plaintiff, its members, and the public will have to endure

24   unnecessary or undue degradation of the federal (public) land affected by the Ivanpah Project

25   and will lose the protections provided for this land by the CDCA Plan.

26   **FIFTH CLAIM:**

**Violation of Native American Graves Protection & Repatriation Act--Ivanpah Project**

27   **(Against All Defendants except Kalish, Goodro, and Trost)**

28       37.    Paragraphs 1 through 36 are fully incorporated into this paragraph.

1    38.    Section 3(b) of the NAGPRA provides as follows: "Native American cultural

2    items not claimed under subsection (a) of this section shall be disposed of in accordance with

3    regulations promulgated by the Secretary [of the Interior] in consultation with the review

4    committee established under section [8] of this [Act], Native American groups, representatives

5    of museums and the scientific community."

6    39.    Section 3(c) of the NAGPRA provides as follows: "The intentional removal from

7    or excavation of Native American cultural items from Federal or tribal lands for purposes of

8    discovery, study, or removal of such items is permitted only if--

9        "(1) such items are excavated or removed pursuant to a permit issued

10       under section 470cc of Title 16 [of the U.S. Code] which shall be consistent with

11       this [Act];

12       "(2) such items are excavated or removed after consultation with or, in the

13       case of tribal lands, consent of the appropriate (if any) Indian tribe or Native

14       Hawaiian organization;

15       "(3) the ownership and right of control of the disposition of such items

16       shall be as provided in subsections (a) and (b) of this section; and

17       "(4) proof of consultation or consent under paragraph (2) is

18       shown."

19   40.    Defendants' approval of the Ivanpah Project will result in the intentional

20   excavation, disposal, or other removal of Native American cultural items (including human

21   remains) known to be or strongly suspected of being on the site of the Project without

22   compliance with the conditions necessary for excavation, disposal, or other removal.  By way

23   of example and not limitation, Defendants have not consulted with or obtained the consent of

24   the Indian tribe whose cultural remains or located on the site of the Project.

25   41.    Defendants' failure to consult with and obtain the consent of the appropriate

26   Indian tribe prior to excavating, disposing of, or otherwise removing Native American cultural

27   items (including human remains) known to be or strongly suspected of being on the site of the

28

1    Ivanpah Project was contrary to the NAGPRA and arbitrary, capricious, an abuse of discretion,

2    or otherwise not in accordance with law as required by the APA.

3         42.    Plaintiffs, their respective members, and other members of the public have been

4    harmed as a result of Defendants' violations of the NAGPRA and the APA because they have

5    been denied the benefits and protections provided by compliance with those laws.  By way of

6    example and without limitation, Plaintiff, its members, and the public (including the appropriate

7    Indian tribe) will have to endure the excavation, disposal, or other removal of Native American

8    cultural items (including human remains) located on the site of the Ivanpah Project without the

9    necessary consultation and consent prior to Defendants' approval of the Project.

10                                **SIXTH CLAIM:**
                **Violation of National Historic Preservation Act--Genesis Project**
11                  **(Against All Defendants except Lee, Goodro, and Trost)**

12        43.    Paragraphs 1 through 42 are fully incorporated into this paragraph.

13        44.    NHPA Section 101(d)(6)(B) provides as follows: "(A) Properties of traditional

14   religious and cultural importance to an Indian tribe or Native Hawaiian organization may be

15   determined to be eligible for inclusion on the National Register.   (B) In carrying out its

16   responsibilities under section 106 of this Act, a Federal agency shall consult with any Indian

17   tribe or Native Hawaiian organization that attaches religious and cultural significance to

18   properties described in subparagraph (A)." NHPA Section 106 provides as follows: "The head

19   of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally

20   assisted undertaking in any State and the head of any Federal department or independent agency

21   having authority to license any undertaking shall, prior to the approval of the expenditure of any

22   Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take

23   into account the effect of the undertaking on any district, site, building, structure, or object that

24   is included in or eligible for inclusion in the National Register.  The head of any such Federal

25   agency shall afford the Advisory Council on Historic Preservation established under Title II of

26   this Act a reasonable opportunity to comment with regard to such undertaking."

27        45.    Plaintiffs, both separately and collectively, attach religious and cultural

28   significance to the federal (public) land that will be affected by the Genesis Project.  This land

1  has traditional religious and cultural importance to Indian tribes and to Plaintiffs. Consequently,

2  Plaintiffs will be seriously harmed by Defendants' failure to comply with NHPA.

3        46.    Under *Amendment No. 1* (Exhibit "A"), Defendants were required to perform the

4  NHPA-prescribed consultations with Plaintiff LA CUNA. Even in the absence of *Amendment*

5  *No. 1*, Defendants were required to perform the NHPA-prescribed consultations for the benefit

6  of Plaintiffs (among others).

7        47.    Defendants failed to perform the NHPA-prescribed consultations for the Genesis

8  Project. Their failure in this regard was contrary to NHPA and arbitrary, capricious, an abuse

9  of discretion, or otherwise not in accordance with law as required by the APA.

10        48.    Plaintiffs, their respective members, and other members of the public have been

11  harmed as a result of Defendants' violations of NHPA and the APA because they have been

12  denied the benefits and protections provided by compliance with those laws. By way of

13  example and without limitation, Plaintiff, its members, the public, and the decision-makers who

14  approved and are carrying out the Genesis Project were not fully informed about the traditional

15  religious and cultural importance attached by Plaintiffs and Indian tribes to the federal (public)

16  land that will be affected by the Genesis Project.

17                    **SEVENTH CLAIM:**
        **Violation of National Environmental Policy Act--Genesis Project**

18          **(Against All Defendants except Lee, Goodro, and Trost)**

19        49.    Paragraphs 1 through 48 are fully incorporated into this paragraph.

20        50.    NEPA requires every federal agency to prepare an environmental impact

21  statement ("EIS") for every major action significantly affecting the quality of the human

22  environment that the agency proposes to approve or carry out. In general, the EIS must

23  adequately address (*i*) the proposed action's environmental impact, (*ii*) any adverse

24  environmental effects that cannot be avoided if the proposed action is implemented, (*iii*)

25  alternatives to the proposed action, (*iv*) the relationship between local short-term uses of the

26  environment and the maintenance and enhancement of long-term productivity, (*v*) any

27  irreversible and irretrievable commitments of resources that would be involved in the proposed

28

1    action if implemented, (*vi*) mitigation measures for the proposed action, and (*vii*) cumulative

2    impacts for the proposed action.

3        51.    Defendants have not prepared an adequate EIS for the Genesis Project even

4    though it is a major action proposed to be approved and carried out by at least one federal

5    agency and has the potential to affect the quality of the human environment, including but not

6    limited to the environment in the California Desert Conservation Area.

7        52.    Defendants' failure to prepare an adequate EIS for the Genesis Project was

8    contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in

9    accordance with law as required by the APA.

10       53.    Plaintiffs, their respective members, and other members of the public have been

11   harmed as a result of Defendants' violations of NEPA and the APA because they have been

12   denied the benefits and protections provided by compliance with those laws.   By way of

13   example and without limitation, Plaintiff, its members, the public, and the decision-makers who

14   approved and are carrying out the Project were not fully informed about the impacts of,

15   mitigation measures for, and alternatives to the Project prior to the decision to approve and carry

16   out the Project.

**EIGHTH CLAIM:**
**Violation of National Environmental Policy Act--Genesis Project**
**(Against All Defendants except Lee, Goodro, and Trost)**

19       54.    Paragraphs 1 through 53 are fully incorporated into this paragraph.

20       55.    NEPA (under *Kleppe v. Sierra Club*, 427 U.S. 390 (1976)) requires the

21   environmental consequences of several proposals that will have cumulative or synergistic

22   environmental impacts upon a region to be considered together in a programmatic EIS.  Section

23   1502.4(b) of Title 40 of the Code of Federal Regulations provides that federal agencies "shall

24   prepare statements on broad actions so that they are relevant to policy and are timed to coincide

25   with meaningful points in agency planning and decisionmaking."

26       56.    Each of the Projects is a major federal action, and together they constitute broad

27   action by Defendants.

28       57.    Defendants did not prepare a programmatic EIS for the Projects.

58.   With regard to the Genesis Project, Defendants' failure to prepare a programmatic EIS for the Projects was contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

59.   Plaintiffs, their respective members, and other members of the public have been harmed as a result of Defendants' violations of NEPA and the APA because they have been denied the benefits and protections provided by compliance with those laws.  By way of example and without limitation, Plaintiff, its members, the public, and the decision-makers who approved and are carrying out the Project were not fully informed about the programmatic impacts of, mitigation measures for, and alternatives to the Projects prior to the decision to approve and carry out the Genesis Project.

### NINTH CLAIM:
**Violation of Federal Land Policy and Management Act--Genesis Project**
**(Against All Defendants except Lee, Goodro, and Trost)**

60.   Paragraphs 1 through 59 are fully incorporated into this paragraph.

61.   FLPMA Section 302(b) provides as follows: "In managing the public lands, the Secretary shall, subject to this Act and other applicable law and under such terms and conditions as are consistent with such law, regulate, through easements, permits, leases, licenses, published rules, or other instruments as the Secretary deems appropriate, the use, occupancy, and development of the public lands, including, but not limited to, long-term leases to permit individuals to utilize public lands for habitation, cultivation, and the development of small trade or manufacturing concerns: *Provided*, That unless otherwise provided for by law, the Secretary may permit Federal departments and agencies to use, occupy, and develop public lands only through rights-of-way under section 507 of this Act, withdrawals under section 204 of this Act, and, where the proposed use and development are similar or closely related to the programs of the Secretary for the public lands involved, cooperative agreements under subsection (b) of section 307 of this Act: *Provided further*, That nothing in this Act shall be construed as authorizing the Secretary concerned to require Federal permits to hunt and fish on public lands or on lands in the National Forest System and adjacent waters or as enlarging or diminishing the responsibility and authority of the States for management of fish and resident wildlife.

1   However, the Secretary concerned may designate areas of public land and of lands in the
2   National Forest System where, and establish periods when, no hunting or fishing will be
3   permitted for reasons of public safety, administration, or compliance with provisions of
4   applicable law.  Except in emergencies, any regulations of the Secretary concerned relating to
5   hunting and fishing pursuant to this section shall be put into effect only after consultation with
6   the appropriate State fish and game department.  Nothing in this Act shall modify or change any
7   provision of Federal law relating to migratory birds or to endangered or threatened species.
8   Except as provided in section 314, section 603, and subsection (f) of section 601 of this Act and
9   in the last sentence of this paragraph, no provision of this section or any other section of this Act
10  shall in any way amend the Mining Law of 1872 or impair the rights of any locators or claims
11  under that Act, including, but not limited to, rights of ingress and egress.  In managing the
12  public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent
13  unnecessary or undue degradation of the lands."

14      62.    FLPMA Section 601(d) provides as follows: "The Secretary [of the Interior], in
15  accordance with section 202 of this Act, shall prepare and implement a comprehensive, long-
16  range plan for the management, use, development, and protection of the public lands within the
17  California Desert Conservation Area. Such plan shall take into account the principles of
18  multiple use and sustained yield in providing for resource use and development, including, but
19  not limited to, maintenance of environmental quality, rights-of-way, and mineral development.
20  Such plan shall be completed and implementation there-of initiated on or before September 30,
21  1980."

22      63.    FLPMA Section 601(f) provides as follows: "Subject to valid existing rights,
23  nothing in this Act shall affect the applicability of the United States mining laws on the public
24  lands within the California Desert Conservation Area, except that all mining claims located on
25  public lands within the California Desert Conservation Area shall be subject to such reasonable
26  regulations as the Secretary may prescribe to effectuate the purposes of this section.  Any patent
27  issued on any such mining claim shall recite this limitation and continue to be subject to such
28  regulations.  Such regulations shall provide for such measures as may be reason-able to protect

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.                    Page 17

1  the scenic, scientific, and environmental values of the public lands of the California Desert

2  Conservation Area against undue impairment, and to assure against pollution of the streams and

3  waters within the California Desert Conservation Area."

4      64    Defendants have not complied with FLPMA as it relates to the Genesis Project

5  even though it is located on federal (public) land and is within the California Desert

6  Conservation Area and subject to the CDCA Plan.

7      65.    Defendants' failure to comply with the CDCA Plan and take all action necessary

8  to prevent unnecessary or undue degradation of the federal (public) land affected when they

9  approved the Genesis Project was contrary to FLPMA and arbitrary, capricious, an abuse of

10  discretion, or otherwise not in accordance with law as required by the APA.

11      66.    Plaintiffs, their respective members, and other members of the public have been

12  harmed as a result of Defendants' violations of FLPMA and the APA because they have been

13  denied the benefits and protections provided by compliance with those laws.  By way of

14  example and without limitation, Plaintiff, its members, and the public will have to endure

15  unnecessary or undue degradation of the federal (public) land affected by the Genesis Project

16  and will lose the protections provided for this land by the CDCA Plan.

17  **TENTH CLAIM:**

**Violation of Native American Graves Protection & Repatriation Act--Genesis Project**
18  **(Against All Defendants except Lee, Goodro, and Trost)**

19      67.    Paragraphs 1 through 66 are fully incorporated into this paragraph.

20      68.    Section 3(b) of the NAGPRA provides as follows: "Native American cultural

21  items not claimed under subsection (a) of this section shall be disposed of in accordance with

22  regulations promulgated by the Secretary [of the Interior] in consultation with the review

23  committee established under section [8] of this [Act], Native American groups, representatives

24  of museums and the scientific community."

25      69.    Section 3(c) of the NAGPRA provides as follows: "The intentional removal from

26  or excavation of Native American cultural items from Federal or tribal lands for purposes of

27  discovery, study, or removal of such items is permitted only if--

28

"(1) such items are excavated or removed pursuant to a permit issued under section 470cc of Title 16 [of the U.S. Code] which shall be consistent with this [Act];

"(2) such items are excavated or removed after consultation with or, in the case of tribal lands, consent of the appropriate (if any) Indian tribe or Native Hawaiian organization;

"(3) the ownership and right of control of the disposition of such items shall be as provided in subsections (a) and (b) of this section; and

"(4) proof of consultation or consent under paragraph (2) is shown."

70.   Defendants' approval of the Genesis Project will result in the intentional excavation, disposal, or other removal of Native American cultural items (including human remains) known to be or strongly suspected of being on the site of the Project without compliance with the conditions necessary for excavation, disposal, or other removal. By way of example and not limitation, Defendants have not consulted with or obtained the consent of the Indian tribe whose cultural remains or located on the site of the Project.

71.   Defendants' failure to consult with and obtain the consent of the appropriate Indian tribe prior to excavating, disposing of, or otherwise removing Native American cultural items (including human remains) known to be or strongly suspected of being on the site of the Genesis Project was contrary to the NAGPRA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

72.   Plaintiffs, their respective members, and other members of the public have been harmed as a result of Defendants' violations of the NAGPRA and the APA because they have been denied the benefits and protections provided by compliance with those laws. By way of example and without limitation, Plaintiff, its members, and the public (including the appropriate Indian tribe) will have to endure the excavation, disposal, or other removal of Native American cultural items (including human remains) located on the site of the Genesis Project without the necessary consultation and consent prior to Defendants' approval of the Project.

## ELEVENTH CLAIM:
### Violation of National Historic Preservation Act--Imperial Project
### (Against All Defendants except Lee, Kalish, and Trost)

73. Paragraphs 1 through 72 are fully incorporated into this paragraph.

74. NHPA Section 101(d)(6)(B) provides as follows: "(A) Properties of traditional religious and cultural importance to an Indian tribe or Native Hawaiian organization may be determined to be eligible for inclusion on the National Register. (B) In carrying out its responsibilities under section 106 of this Act, a Federal agency shall consult with any Indian tribe or Native Hawaiian organization that attaches religious and cultural significance to properties described in subparagraph (A)." NHPA Section 106 provides as follows: "The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under Title II of this Act a reasonable opportunity to comment with regard to such undertaking."

75. Plaintiffs, both separately and collectively, attach religious and cultural significance to the federal (public) land that will be affected by the Imperial Project. This land has traditional religious and cultural importance to Indian tribes and to Plaintiffs. Consequently, Plaintiffs will be seriously harmed by Defendants' failure to comply with NHPA.

76. Under *Amendment No. 1* (Exhibit "A"), Defendants were required to perform the NHPA-prescribed consultations with Plaintiff LA CUNA. Even in the absence of *Amendment No. 1*, Defendants were required to perform the NHPA-prescribed consultations for the benefit of Plaintiffs (among others).

77. Defendants failed to perform the NHPA-prescribed consultations for the Imperial Project. Their failure in this regard was contrary to NHPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.                    Page 20

1    78.    Plaintiffs, their respective members, and other members of the public have been

2    harmed as a result of Defendants' violations of NHPA and the APA because they have been

3    denied the benefits and protections provided by compliance with those laws.  By way of

4    example and without limitation, Plaintiff, its members, the public, and the decision-makers who

5    approved and are carrying out the Imperial Project were not fully informed about the traditional

6    religious and cultural importance attached by Plaintiffs and Indian tribes to the federal (public)

7    land that will be affected by the Imperial Project.

8                                    **TWELFTH CLAIM:**
                   **Violation of National Environmental Policy Act--Imperial Project**
9                      **(Against All Defendants except Lee, Kalish, and Trost)**

10    79.    Paragraphs 1 through 78 are fully incorporated into this paragraph.

11    80.    NEPA requires every federal agency to prepare an environmental impact

12    statement ("EIS") for every major action significantly affecting the quality of the human

13    environment that the agency proposes to approve or carry out.  In general, the EIS must

14    adequately address (*i*) the proposed action's environmental impact, (*ii*) any adverse

15    environmental effects that cannot be avoided if the proposed action is implemented, (*iii*)

16    alternatives to the proposed action, (*iv*) the relationship between local short-term uses of the

17    environment and the maintenance and enhancement of long-term productivity, (*v*) any

18    irreversible and irretrievable commitments of resources that would be involved in the proposed

19    action if implemented, (*vi*) mitigation measures for the proposed action, and (*vii*) cumulative

20    impacts for the proposed action.

21    81.    Defendants have not prepared an adequate EIS for the Imperial Project even

22    though it is a major action proposed to be approved and carried out by at least one federal

23    agency and has the potential to affect the quality of the human environment, including but not

24    limited to the environment in the California Desert Conservation Area.

25    82.    Defendants' failure to prepare an adequate EIS for the Imperial Project was

26    contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in

27    accordance with law as required by the APA.

28

1   83.   Plaintiffs, their respective members, and other members of the public have been
2   harmed as a result of Defendants' violations of NEPA and the APA because they have been
3   denied the benefits and protections provided by compliance with those laws.   By way of
4   example and without limitation, Plaintiff, its members, the public, and the decision-makers who
5   approved and are carrying out the Project were not fully informed about the impacts of,
6   mitigation measures for, and alternatives to the Project prior to the decision to approve and carry
7   out the Project.

8                               **THIRTEENTH CLAIM:**
    **Violation of National Environmental Policy Act--Imperial Project**
9            **(Against All Defendants except Lee, Kalish, and Trost)**

10   84.   Paragraphs 1 through 83 are fully incorporated into this paragraph.

11   85.   NEPA (under *Kleppe v. Sierra Club*, 427 U.S. 390 (1976)) requires the
12   environmental consequences of several proposals that will have cumulative or synergistic
13   environmental impacts upon a region to be considered together in a programmatic EIS. Section
14   1502.4(b) of Title 40 of the Code of Federal Regulations provides that federal agencies "shall
15   prepare statements on broad actions so that they are relevant to policy and are timed to coincide
16   with meaningful points in agency planning and decisionmaking."

17   86.   Each of the Projects is a major federal action, and together they constitute broad
18   action by Defendants.

19   87.   Defendants did not prepare a programmatic EIS for the Projects.

20   88.   With regard to the Imperial Project, Defendants' failure to prepare a programmatic
21   EIS for the Projects was contrary to NEPA and arbitrary, capricious, an abuse of discretion, or
22   otherwise not in accordance with law as required by the APA.

23   89.   Plaintiffs, their respective members, and other members of the public have been
24   harmed as a result of Defendants' violations of NEPA and the APA because they have been
25   denied the benefits and protections provided by compliance with those laws.   By way of
26   example and without limitation, Plaintiff, its members, the public, and the decision-makers who
27   approved and are carrying out the Project were not fully informed about the programmatic
28

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.                    Page 22

1  impacts of, mitigation measures for, and alternatives to the Projects prior to the decision to
2  approve and carry out the Imperial Project.

### FOURTEENTH CLAIM:
**Violation of Federal Land Policy and Management Act--Imperial Project**
**(Against All Defendants except Lee, Kalish, and Trost)**

5      90.    Paragraphs 1 through 89 are fully incorporated into this paragraph.

6      91.    FLPMA Section 302(b) provides as follows: "In managing the public lands, the
7  Secretary shall, subject to this Act and other applicable law and under such terms and conditions
8  as are consistent with such law, regulate, through easements, permits, leases, licenses, published
9  rules, or other instruments as the Secretary deems appropriate, the use, occupancy, and
10 development of the public lands, including, but not limited to, long-term leases to permit
11 individuals to utilize public lands for habitation, cultivation, and the development of small trade
12 or manufacturing concerns: *Provided*, That unless otherwise provided for by law, the Secretary
13 may permit Federal departments and agencies to use, occupy, and develop public lands only
14 through rights-of-way under section 507 of this Act, withdrawals under section 204 of this Act,
15 and, where the proposed use and development are similar or closely related to the programs of
16 the Secretary for the public lands involved, cooperative agreements under subsection (b) of
17 section 307 of this Act: *Provided further*, That nothing in this Act shall be construed as
18 authorizing the Secretary concerned to require Federal permits to hunt and fish on public lands
19 or on lands in the National Forest System and adjacent waters or as enlarging or diminishing
20 the responsibility and authority of the States for management of fish and resident wildlife.
21 However, the Secretary concerned may designate areas of public land and of lands in the
22 National Forest System where, and establish periods when, no hunting or fishing will be
23 permitted for reasons of public safety, administration, or compliance with provisions of
24 applicable law. Except in emergencies, any regulations of the Secretary concerned relating to
25 hunting and fishing pursuant to this section shall be put into effect only after consultation with
26 the appropriate State fish and game department. Nothing in this Act shall modify or change any
27 provision of Federal law relating to migratory birds or to endangered or threatened species.
28 Except as provided in section 314, section 603, and subsection (f) of section 601 of this Act and

1   in the last sentence of this paragraph, no provision of this section or any other section of this Act

2   shall in any way amend the Mining Law of 1872 or impair the rights of any locators or claims

3   under that Act, including, but not limited to, rights of ingress and egress.  In managing the

4   public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent

5   unnecessary or undue degradation of the lands."

6         92.   FLPMA Section 601(d) provides as follows: "The Secretary [of the Interior], in

7   accordance with section 202 of this Act, shall prepare and implement a comprehensive, long-

8   range plan for the management, use, development, and protection of the public lands within the

9   California Desert Conservation Area. Such plan shall take into account the principles of

10  multiple use and sustained yield in providing for resource use and development, including, but

11  not limited to, maintenance of environmental quality, rights-of-way, and mineral development.

12  Such plan shall be completed and implementation there-of initiated on or before September 30,

13  1980."

14        93.   FLPMA Section 601(f) provides as follows: "Subject to valid existing rights,

15  nothing in this Act shall affect the applicability of the United States mining laws on the public

16  lands within the California Desert Conservation Area, except that all mining claims located on

17  public lands within the California Desert Conservation Area shall be subject to such reasonable

18  regulations as the Secretary may prescribe to effectuate the purposes of this section. Any patent

19  issued on any such mining claim shall recite this limitation and continue to be subject to such

20  regulations.  Such regulations shall provide for such measures as may be reason-able to protect

21  the scenic, scientific, and environmental values of the public lands of the California Desert

22  Conservation Area against undue impairment, and to assure against pollution of the streams and

23  waters within the California Desert Conservation Area."

24        94.   Defendants have not complied with FLPMA as it relates to the Imperial Project

25  even though it is located on federal (public) land and is within the California Desert

26  Conservation Area and subject to the CDCA Plan.

27        95.   Defendants' failure to comply with the CDCA Plan and take all action necessary

28  to prevent unnecessary or undue degradation of the federal (public) land affected when they

1    approved the Imperial Project was contrary to FLPMA and arbitrary, capricious, an abuse of

2    discretion, or otherwise not in accordance with law as required by the APA.

3        96.    Plaintiffs, their respective members, and other members of the public have been

4    harmed as a result of Defendants' violations of FLPMA and the APA because they have been

5    denied the benefits and protections provided by compliance with those laws.  By way of

6    example and without limitation, Plaintiff, its members, and the public will have to endure

7    unnecessary or undue degradation of the federal (public) land affected by the Imperial Project

8    and will lose the protections provided for this land by the CDCA Plan.

9                                    **FIFTEEN CLAIM:**
       **Violation of Native American Graves Protection & Repatriation Act--Imperial Project**
10                  **(Against All Defendants except Lee, Kalish, and Trost)**

11       97.    Paragraphs 1 through 96 are fully incorporated into this paragraph.

12       98.    Section 3(b) of the NAGPRA provides as follows: "Native American cultural

13   items not claimed under subsection (a) of this section shall be disposed of in accordance with

14   regulations promulgated by the Secretary [of the Interior] in consultation with the review

15   committee established under section [8] of this [Act], Native American groups, representatives

16   of museums and the scientific community."

17       99.    Section 3(c) of the NAGPRA provides as follows: "The intentional removal from

18   or excavation of Native American cultural items from Federal or tribal lands for purposes of

19   discovery, study, or removal of such items is permitted only if--

20           "(1) such items are excavated or removed pursuant to a permit issued

21           under section 470cc of Title 16 [of the U.S. Code] which shall be consistent with

22           this [Act];

23           "(2) such items are excavated or removed after consultation with or, in the

24           case of tribal lands, consent of the appropriate (if any) Indian tribe or Native

25           Hawaiian organization;

26           "(3) the ownership and right of control of the disposition of such items

27           shall be as provided in subsections (a) and (b) of this section; and

28

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.                    Page 25

1    "(4) proof of consultation or consent under paragraph (2) is

2    shown."

3        100.   Defendants' approval of the Imperial Project will result in the intentional

4    excavation, disposal, or other removal of Native American cultural items (including human

5    remains) known to be or strongly suspected of being on the site of the Project without

6    compliance with the conditions necessary for excavation, disposal, or other removal.  By way

7    of example and not limitation, Defendants have not consulted with or obtained the consent of

8    the Indian tribe whose cultural remains or located on the site of the Project.

9        101.   Defendants' failure to consult with and obtain the consent of the appropriate

10   Indian tribe prior to excavating, disposing of, or otherwise removing Native American cultural

11   items (including human remains) known to be or strongly suspected of being on the site of the

12   Imperial Project was contrary to the NAGPRA and arbitrary, capricious, an abuse of discretion,

13   or otherwise not in accordance with law as required by the APA.

14       102.   Plaintiffs, their respective members, and other members of the public have been

15   harmed as a result of Defendants' violations of the NAGPRA and the APA because they have

16   been denied the benefits and protections provided by compliance with those laws.  By way of

17   example and without limitation, Plaintiff, its members, and the public (including the appropriate

18   Indian tribe) will have to endure the excavation, disposal, or other removal of Native American

19   cultural items (including human remains) located on the site of the Imperial Project without the

20   necessary consultation and consent prior to Defendants' approval of the Project.

21
22
### SIXTEENTH CLAIM:
**Violation of National Historic Preservation Act--Chevron Project**
**(Against All Defendants except Lee, Kalish, and Goodro)**

23       103.   Paragraphs 1 through 102 are fully incorporated into this paragraph.

24       104.   NHPA Section 101(d)(6)(B) provides as follows: "(A) Properties of traditional

25   religious and cultural importance to an Indian tribe or Native Hawaiian organization may be

26   determined to be eligible for inclusion on the National Register.  (B) In carrying out its

27   responsibilities under section 106 of this Act, a Federal agency shall consult with any Indian

28   tribe or Native Hawaiian organization that attaches religious and cultural significance to

1   properties described in subparagraph (A)." NHPA Section 106 provides as follows: "The head

2   of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally

3   assisted undertaking in any State and the head of any Federal department or independent agency

4   having authority to license any undertaking shall, prior to the approval of the expenditure of any

5   Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take

6   into account the effect of the undertaking on any district, site, building, structure, or object that

7   is included in or eligible for inclusion in the National Register. The head of any such Federal

8   agency shall afford the Advisory Council on Historic Preservation established under Title II of

9   this Act a reasonable opportunity to comment with regard to such undertaking."

10      105.    Plaintiffs, both separately and collectively, attach religious and cultural

11  significance to the federal (public) land that will be affected by the Chevron Project. This land

12  has traditional religious and cultural importance to Indian tribes and to Plaintiffs. Consequently,

13  Plaintiffs will be seriously harmed by Defendants' failure to comply with NHPA.

14      106.    Under *Amendment No. 1* (Exhibit "A"), Defendants were required to perform the

15  NHPA-prescribed consultations with Plaintiff LA CUNA. Even in the absence of *Amendment

16  No. 1*, Defendants were required to perform the NHPA-prescribed consultations for the benefit

17  of Plaintiffs (among others).

18      107.    Defendants failed to perform the NHPA-prescribed consultations for the Chevron

19  Project. Their failure in this regard was contrary to NHPA and arbitrary, capricious, an abuse

20  of discretion, or otherwise not in accordance with law as required by the APA.

21      108.    Plaintiffs, their respective members, and other members of the public have been

22  harmed as a result of Defendants' violations of NHPA and the APA because they have been

23  denied the benefits and protections provided by compliance with those laws. By way of

24  example and without limitation, Plaintiff, its members, the public, and the decision-makers who

25  approved and are carrying out the Chevron Project were not fully informed about the traditional

26  religious and cultural importance attached by Plaintiffs and Indian tribes to the federal (public)

27  land that will be affected by the Chevron Project.

28

1

### SEVENTEENTH CLAIM:
**Violation of National Environmental Policy Act--Chevron Project
(Against All Defendants except Lee, Kalish, and Goodro)**

2

3        109.    Paragraphs 1 through 108 are fully incorporated into this paragraph.

4        110.    NEPA requires every federal agency to prepare an environmental impact

5    statement ("EIS") for every major action significantly affecting the quality of the human

6    environment that the agency proposes to approve or carry out.  In general, the EIS must

7    adequately address (*i*) the proposed action's environmental impact, (*ii*) any adverse

8    environmental effects that cannot be avoided if the proposed action is implemented, (*iii*)

9    alternatives to the proposed action, (*iv*) the relationship between local short-term uses of the

10   environment and the maintenance and enhancement of long-term productivity, (*v*) any

11   irreversible and irretrievable commitments of resources that would be involved in the proposed

12   action if implemented, (*vi*) mitigation measures for the proposed action, and (*vii*) cumulative

13   impacts for the proposed action.

14       111.    Defendants have not prepared an adequate EIS for the Chevron Project even

15   though it is a major action proposed to be approved and carried out by at least one federal

16   agency and has the potential to affect the quality of the human environment, including but not

17   limited to the environment in the California Desert Conservation Area.

18       112.    Defendants' failure to prepare an adequate EIS for the Chevron Project was

19   contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in

20   accordance with law as required by the APA.

21       113.    Plaintiffs, their respective members, and other members of the public have been

22   harmed as a result of Defendants' violations of NEPA and the APA because they have been

23   denied the benefits and protections provided by compliance with those laws.  By way of

24   example and without limitation, Plaintiff, its members, the public, and the decision-makers who

25   approved and are carrying out the Project were not fully informed about the impacts of,

26   mitigation measures for, and alternatives to the Project prior to the decision to approve and carry

27   out the Project.

28

**EIGHTEENTH CLAIM:**
**Violation of National Environmental Policy Act--Chevron Project**
**(Against All Defendants except Lee, Kalish, and Goodro)**

114.   Paragraphs 1 through 113 are fully incorporated into this paragraph.

115.   NEPA (under *Kleppe v. Sierra Club*, 427 U.S. 390 (1976)) requires the environmental consequences of several proposals that will have cumulative or synergistic environmental impacts upon a region to be considered together in a programmatic EIS. Section 1502.4(b) of Title 40 of the Code of Federal Regulations provides that federal agencies "shall prepare statements on broad actions so that they are relevant to policy and are timed to coincide with meaningful points in agency planning and decisionmaking."

116.   Each of the Projects is a major federal action, and together they constitute broad action by Defendants.

117.   Defendants did not prepare a programmatic EIS for the Projects.

118.   With regard to the Chevron Project, Defendants' failure to prepare a programmatic EIS for the Projects was contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

119.   Plaintiffs, their respective members, and other members of the public have been harmed as a result of Defendants' violations of NEPA and the APA because they have been denied the benefits and protections provided by compliance with those laws.  By way of example and without limitation, Plaintiff, its members, the public, and the decision-makers who approved and are carrying out the Project were not fully informed about the programmatic impacts of, mitigation measures for, and alternatives to the Projects prior to the decision to approve and carry out the Chevron Project.

**NINETEENTH CLAIM:**
**Violation of Federal Land Policy and Management Act--Chevron Project**
**(Against All Defendants except Lee, Kalish, and Goodro)**

120.   Paragraphs 1 through 119 are fully incorporated into this paragraph.

121.   FLPMA Section 302(b) provides as follows: "In managing the public lands, the Secretary shall, subject to this Act and other applicable law and under such terms and conditions as are consistent with such law, regulate, through easements, permits, leases, licenses, published

1  rules, or other instruments as the Secretary deems appropriate, the use, occupancy, and
2  development of the public lands, including, but not limited to, long-term leases to permit
3  individuals to utilize public lands for habitation, cultivation, and the development of small trade
4  or manufacturing concerns: *Provided*, That unless otherwise provided for by law, the Secretary
5  may permit Federal departments and agencies to use, occupy, and develop public lands only
6  through rights-of-way under section 507 of this Act, withdrawals under section 204 of this Act,
7  and, where the proposed use and development are similar or closely related to the programs of
8  the Secretary for the public lands involved, cooperative agreements under subsection (b) of
9  section 307 of this Act: *Provided further*, That nothing in this Act shall be construed as
10 authorizing the Secretary concerned to require Federal permits to hunt and fish on public lands
11 or on lands in the National Forest System and adjacent waters or as enlarging or diminishing
12 the responsibility and authority of the States for management of fish and resident wildlife.
13 However, the Secretary concerned may designate areas of public land and of lands in the
14 National Forest System where, and establish periods when, no hunting or fishing will be
15 permitted for reasons of public safety, administration, or compliance with provisions of
16 applicable law. Except in emergencies, any regulations of the Secretary concerned relating to
17 hunting and fishing pursuant to this section shall be put into effect only after consultation with
18 the appropriate State fish and game department. Nothing in this Act shall modify or change any
19 provision of Federal law relating to migratory birds or to endangered or threatened species.
20 Except as provided in section 314, section 603, and subsection (f) of section 601 of this Act and
21 in the last sentence of this paragraph, no provision of this section or any other section of this Act
22 shall in any way amend the Mining Law of 1872 or impair the rights of any locators or claims
23 under that Act, including, but not limited to, rights of ingress and egress. In managing the
24 public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent
25 unnecessary or undue degradation of the lands."
26      122.   FLPMA Section 601(d) provides as follows: "The Secretary [of the Interior], in
27 accordance with section 202 of this Act, shall prepare and implement a comprehensive, long-
28 range plan for the management, use, development, and protection of the public lands within the

California Desert Conservation Area. Such plan shall take into account the principles of multiple use and sustained yield in providing for resource use and development, including, but not limited to, maintenance of environmental quality, rights-of-way, and mineral development. Such plan shall be completed and implementation there-of initiated on or before September 30, 1980."

123.   FLPMA Section 601(f) provides as follows: "Subject to valid existing rights, nothing in this Act shall affect the applicability of the United States mining laws on the public lands within the California Desert Conservation Area, except that all mining claims located on public lands within the California Desert Conservation Area shall be subject to such reasonable regulations as the Secretary may prescribe to effectuate the purposes of this section. Any patent issued on any such mining claim shall recite this limitation and continue to be subject to such regulations. Such regulations shall provide for such measures as may be reason-able to protect the scenic, scientific, and environmental values of the public lands of the California Desert Conservation Area against undue impairment, and to assure against pollution of the streams and waters within the California Desert Conservation Area."

124.   Defendants have not complied with FLPMA as it relates to the Chevron Project even though it is located on federal (public) land and is within the California Desert Conservation Area and subject to the CDCA Plan.

125.   Defendants' failure to comply with the CDCA Plan and take all action necessary to prevent unnecessary or undue degradation of the federal (public) land affected when they approved the Chevron Project was contrary to FLPMA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

126.   Plaintiffs, their respective members, and other members of the public have been harmed as a result of Defendants' violations of FLPMA and the APA because they have been denied the benefits and protections provided by compliance with those laws.   By way of example and without limitation, Plaintiff, its members, and the public will have to endure unnecessary or undue degradation of the federal (public) land affected by the Chevron Project and will lose the protections provided for this land by the CDCA Plan.

1

**TWENTIETH CLAIM:**
**Violation of Native American Graves Protection & Repatriation Act--Chevron Project**
2            **(Against All Defendants except Lee, Kalish, and Goodro)**

3       127.    Paragraphs 1 through 126 are fully incorporated into this paragraph.

4       128.    Section 3(b) of the NAGPRA provides as follows: "Native American cultural

5 items not claimed under subsection (a) of this section shall be disposed of in accordance with

6 regulations promulgated by the Secretary [of the Interior] in consultation with the review

7 committee established under section [8] of this [Act], Native American groups, representatives

8 of museums and the scientific community."

9       129.    Section 3(c) of the NAGPRA provides as follows: "The intentional removal from

10 or excavation of Native American cultural items from Federal or tribal lands for purposes of

11 discovery, study, or removal of such items is permitted only if--

12           "(1) such items are excavated or removed pursuant to a permit issued

13           under section 470cc of Title 16 [of the U.S. Code] which shall be consistent with

14           this [Act];

15           "(2) such items are excavated or removed after consultation with or, in the

16           case of tribal lands, consent of the appropriate (if any) Indian tribe or Native

17           Hawaiian organization;

18           "(3) the ownership and right of control of the disposition of such items

19           shall be as provided in subsections (a) and (b) of this section; and

20           "(4) proof of consultation or consent under paragraph (2) is

21           shown."

22       130.    Defendants' approval of the Chevron Project will result in the intentional

23 excavation, disposal, or other removal of Native American cultural items (including human

24 remains) known to be or strongly suspected of being on the site of the Project without

25 compliance with the conditions necessary for excavation, disposal, or other removal. By way

26 of example and not limitation, Defendants have not consulted with or obtained the consent of

27 the Indian tribe whose cultural remains or located on the site of the Project.

28

1    131.   Defendants' failure to consult with and obtain the consent of the appropriate

2  Indian tribe prior to excavating, disposing of, or otherwise removing Native American cultural

3  items (including human remains) known to be or strongly suspected of being on the site of the

4  Chevron Project was contrary to the NAGPRA and arbitrary, capricious, an abuse of discretion,

5  or otherwise not in accordance with law as required by the APA.

6    132.   Plaintiffs, their respective members, and other members of the public have been

7  harmed as a result of Defendants' violations of the NAGPRA and the APA because they have

8  been denied the benefits and protections provided by compliance with those laws.  By way of

9  example and without limitation, Plaintiff, its members, and the public (including the appropriate

10  Indian tribe) will have to endure the excavation, disposal, or other removal of Native American

11  cultural items (including human remains) located on the site of the Chevron Project without the

12  necessary consultation and consent prior to Defendants' approval of the Project.

13              **TWENTY-FIRST CLAIM:**
                **Violation of National Historic Preservation Act--Calico Project**
14              **(Against All Defendants except Lee, Kalish, and Goodro)**

15    133.   Paragraphs 1 through 132 are fully incorporated into this paragraph.

16    134.   NHPA Section 101(d)(6)(B) provides as follows: "(A) Properties of traditional

17  religious and cultural importance to an Indian tribe or Native Hawaiian organization may be

18  determined to be eligible for inclusion on the National Register.  (B) In carrying out its

19  responsibilities under section 106 of this Act, a Federal agency shall consult with any Indian

20  tribe or Native Hawaiian organization that attaches religious and cultural significance to

21  properties described in subparagraph (A)." NHPA Section 106 provides as follows: "The head

22  of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally

23  assisted undertaking in any State and the head of any Federal department or independent agency

24  having authority to license any undertaking shall, prior to the approval of the expenditure of any

25  Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take

26  into account the effect of the undertaking on any district, site, building, structure, or object that

27  is included in or eligible for inclusion in the National Register.  The head of any such Federal

28

1   agency shall afford the Advisory Council on Historic Preservation established under Title II of

2   this Act a reasonable opportunity to comment with regard to such undertaking."

3       135.   Plaintiffs, both separately and collectively, attach religious and cultural

4   significance to the federal (public) land that will be affected by the Calico Project.  This land

5   has traditional religious and cultural importance to Indian tribes and to Plaintiffs.  Consequently,

6   Plaintiffs will be seriously harmed by Defendants' failure to comply with NHPA.

7       136.   Under *Amendment No. 1* (Exhibit "A"), Defendants were required to perform the

8   NHPA-prescribed consultations with Plaintiff LA CUNA.  Even in the absence of *Amendment*

9   *No. 1*, Defendants were required to perform the NHPA-prescribed consultations for the benefit

10  of Plaintiffs (among others).

11      137.   Defendants failed to perform the NHPA-prescribed consultations for the Calico

12  Project.  Their failure in this regard was contrary to NHPA and arbitrary, capricious, an abuse

13  of discretion, or otherwise not in accordance with law as required by the APA.

14      138.   Plaintiffs, their respective members, and other members of the public have been

15  harmed as a result of Defendants' violations of NHPA and the APA because they have been

16  denied the benefits and protections provided by compliance with those laws.  By way of

17  example and without limitation, Plaintiff, its members, the public, and the decision-makers who

18  approved and are carrying out the Calico Project were not fully informed about the traditional

19  religious and cultural importance attached by Plaintiffs and Indian tribes to the federal (public)

20  land that will be affected by the Calico Project.

21                        **TWENTY-SECOND CLAIM:**
                **Violation of National Environmental Policy Act--Calico Project**
22                **(Against All Defendants except Lee, Kalish, and Goodro)**

23      139.   Paragraphs 1 through 138 are fully incorporated into this paragraph.

24      140.   NEPA requires every federal agency to prepare an environmental impact

25  statement ("EIS") for every major action significantly affecting the quality of the human

26  environment that the agency proposes to approve or carry out.  In general, the EIS must

27  adequately address (*i*) the proposed action's environmental impact, (*ii*) any adverse

28  environmental effects that cannot be avoided if the proposed action is implemented, (*iii*)

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.        Page 34

1  alternatives to the proposed action, (*iv*) the relationship between local short-term uses of the
2  environment and the maintenance and enhancement of long-term productivity, (*v*) any
3  irreversible and irretrievable commitments of resources that would be involved in the proposed
4  action if implemented, (*vi*) mitigation measures for the proposed action, and (*vii*) cumulative
5  impacts for the proposed action.

6      141.   Defendants have not prepared an adequate EIS for the Calico Project even though
7  it is a major action proposed to be approved and carried out by at least one federal agency and
8  has the potential to affect the quality of the human environment, including but not limited to the
9  environment in the California Desert Conservation Area.

10     142.   Defendants' failure to prepare an adequate EIS for the Calico Project was contrary
11  to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with
12  law as required by the APA.

13     143.   Plaintiffs, their respective members, and other members of the public have been
14  harmed as a result of Defendants' violations of NEPA and the APA because they have been
15  denied the benefits and protections provided by compliance with those laws.  By way of
16  example and without limitation, Plaintiff, its members, the public, and the decision-makers who
17  approved and are carrying out the Project were not fully informed about the impacts of,
18  mitigation measures for, and alternatives to the Project prior to the decision to approve and carry
19  out the Project.

20             **TWENTY-THIRD CLAIM:**
             **Violation of National Environmental Policy Act--Calico Project**
21             **(Against All Defendants except Lee, Kalish, and Goodro)**

22     144.   Paragraphs 1 through 143 are fully incorporated into this paragraph.

23     145.   NEPA (under *Kleppe v. Sierra Club*, 427 U.S. 390 (1976)) requires the
24  environmental consequences of several proposals that will have cumulative or synergistic
25  environmental impacts upon a region to be considered together in a programmatic EIS. Section
26  1502.4(b) of Title 40 of the Code of Federal Regulations provides that federal agencies "shall
27  prepare statements on broad actions so that they are relevant to policy and are timed to coincide
28  with meaningful points in agency planning and decisionmaking."

146.   Each of the Projects is a major federal action, and together they constitute broad action by Defendants.

147.   Defendants did not prepare a programmatic EIS for the Projects.

148.   With regard to the Calico Project, Defendants' failure to prepare a programmatic EIS for the Projects was contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

149.   Plaintiffs, their respective members, and other members of the public have been harmed as a result of Defendants' violations of NEPA and the APA because they have been denied the benefits and protections provided by compliance with those laws.  By way of example and without limitation, Plaintiff, its members, the public, and the decision-makers who approved and are carrying out the Project were not fully informed about the programmatic impacts of, mitigation measures for, and alternatives to the Projects prior to the decision to approve and carry out the Calico Project.

### TWENTY-FOURTH CLAIM:
#### Violation of Federal Land Policy and Management Act--Calico Project
#### (Against All Defendants except Lee, Kalish, and Goodro)

150.   Paragraphs 1 through 149 are fully incorporated into this paragraph.

151.   FLPMA Section 302(b) provides as follows: "In managing the public lands, the Secretary shall, subject to this Act and other applicable law and under such terms and conditions as are consistent with such law, regulate, through easements, permits, leases, licenses, published rules, or other instruments as the Secretary deems appropriate, the use, occupancy, and development of the public lands, including, but not limited to, long-term leases to permit individuals to utilize public lands for habitation, cultivation, and the development of small trade or manufacturing concerns: *Provided*, That unless otherwise provided for by law, the Secretary may permit Federal departments and agencies to use, occupy, and develop public lands only through rights-of-way under section 507 of this Act, withdrawals under section 204 of this Act, and, where the proposed use and development are similar or closely related to the programs of the Secretary for the public lands involved, cooperative agreements under subsection (b) of section 307 of this Act: *Provided further*, That nothing in this Act shall be construed as

1  authorizing the Secretary concerned to require Federal permits to hunt and fish on public lands
2  or on lands in the National Forest System and adjacent waters or as enlarging or diminishing
3  the responsibility and authority of the States for management of fish and resident wildlife.
4  However, the Secretary concerned may designate areas of public land and of lands in the
5  National Forest System where, and establish periods when, no hunting or fishing will be
6  permitted for reasons of public safety, administration, or compliance with provisions of
7  applicable law. Except in emergencies, any regulations of the Secretary concerned relating to
8  hunting and fishing pursuant to this section shall be put into effect only after consultation with
9  the appropriate State fish and game department. Nothing in this Act shall modify or change any
10  provision of Federal law relating to migratory birds or to endangered or threatened species.
11  Except as provided in section 314, section 603, and subsection (f) of section 601 of this Act and
12  in the last sentence of this paragraph, no provision of this section or any other section of this Act
13  shall in any way amend the Mining Law of 1872 or impair the rights of any locators or claims
14  under that Act, including, but not limited to, rights of ingress and egress. In managing the
15  public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent
16  unnecessary or undue degradation of the lands."

17       152.   FLPMA Section 601(d) provides as follows: "The Secretary [of the Interior], in
18  accordance with section 202 of this Act, shall prepare and implement a comprehensive, long-
19  range plan for the management, use, development, and protection of the public lands within the
20  California Desert Conservation Area. Such plan shall take into account the principles of
21  multiple use and sustained yield in providing for resource use and development, including, but
22  not limited to, maintenance of environmental quality, rights-of-way, and mineral development.
23  Such plan shall be completed and implementation there-of initiated on or before September 30,
24  1980."

25       153.   FLPMA Section 601(f) provides as follows: "Subject to valid existing rights,
26  nothing in this Act shall affect the applicability of the United States mining laws on the public
27  lands within the California Desert Conservation Area, except that all mining claims located on
28  public lands within the California Desert Conservation Area shall be subject to such reasonable

1  regulations as the Secretary may prescribe to effectuate the purposes of this section. Any patent

2  issued on any such mining claim shall recite this limitation and continue to be subject to such

3  regulations. Such regulations shall provide for such measures as may be reason-able to protect

4  the scenic, scientific, and environmental values of the public lands of the California Desert

5  Conservation Area against undue impairment, and to assure against pollution of the streams and

6  waters within the California Desert Conservation Area."

7      154.   Defendants have not complied with FLPMA as it relates to the Calico Project

8  even though it is located on federal (public) land and is within the California Desert

9  Conservation Area and subject to the CDCA Plan.

10     155.   Defendants' failure to comply with the CDCA Plan and take all action necessary

11 to prevent unnecessary or undue degradation of the federal (public) land affected when they

12 approved the Calico Project was contrary to FLPMA and arbitrary, capricious, an abuse of

13 discretion, or otherwise not in accordance with law as required by the APA.

14     156.   Plaintiffs, their respective members, and other members of the public have been

15 harmed as a result of Defendants' violations of FLPMA and the APA because they have been

16 denied the benefits and protections provided by compliance with those laws.  By way of

17 example and without limitation, Plaintiff, its members, and the public will have to endure

18 unnecessary or undue degradation of the federal (public) land affected by the Calico Project and

19 will lose the protections provided for this land by the CDCA Plan.

20                          **TWENTY-FIFTH CLAIM:**
   **Violation of Native American Graves Protection & Repatriation Act--Calico Project**
21                **(Against All Defendants except Lee, Kalish, and Goodro)**

22     157.   Paragraphs 1 through 156 are fully incorporated into this paragraph.

23     158.   Section 3(b) of the NAGPRA provides as follows: "Native American cultural

24 items not claimed under subsection (a) of this section shall be disposed of in accordance with

25 regulations promulgated by the Secretary [of the Interior] in consultation with the review

26 committee established under section [8] of this [Act], Native American groups, representatives

27 of museums and the scientific community."

28

159.   Section 3(c) of the NAGPRA provides as follows: "The intentional removal from or excavation of Native American cultural items from Federal or tribal lands for purposes of discovery, study, or removal of such items is permitted only if--

"(1) such items are excavated or removed pursuant to a permit issued under section 470cc of Title 16 [of the U.S. Code] which shall be consistent with this [Act];

"(2) such items are excavated or removed after consultation with or, in the case of tribal lands, consent of the appropriate (if any) Indian tribe or Native Hawaiian organization;

"(3) the ownership and right of control of the disposition of such items shall be as provided in subsections (a) and (b) of this section; and

"(4) proof of consultation or consent under paragraph (2) is shown."

160.   Defendants' approval of the Calico Project will result in the intentional excavation, disposal, or other removal of Native American cultural items (including human remains) known to be or strongly suspected of being on the site of the Project without compliance with the conditions necessary for excavation, disposal, or other removal. By way of example and not limitation, Defendants have not consulted with or obtained the consent of the Indian tribe whose cultural remains or located on the site of the Project.

161.   Defendants' failure to consult with and obtain the consent of the appropriate Indian tribe prior to excavating, disposing of, or otherwise removing Native American cultural items (including human remains) known to be or strongly suspected of being on the site of the Calico Project was contrary to the NAGPRA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

162.   Plaintiffs, their respective members, and other members of the public have been harmed as a result of Defendants' violations of the NAGPRA and the APA because they have been denied the benefits and protections provided by compliance with those laws. By way of example and without limitation, Plaintiff, its members, and the public (including the appropriate

1  Indian tribe) will have to endure the excavation, disposal, or other removal of Native American

2  cultural items (including human remains) located on the site of the Calico Project without the

3  necessary consultation and consent prior to Defendants' approval of the Project.

### TWENTY-SIXTH CLAIM:
#### Violation of National Historic Preservation Act--Blythe Project
#### (Against All Defendants except Lee, Trost, and Goodro)

6      163.   Paragraphs 1 through 162 are fully incorporated into this paragraph.

7      164.   NHPA Section 101(d)(6)(B) provides as follows: "(A) Properties of traditional

8  religious and cultural importance to an Indian tribe or Native Hawaiian organization may be

9  determined to be eligible for inclusion on the National Register.  (B) In carrying out its

10  responsibilities under section 106 of this Act, a Federal agency shall consult with any Indian

11  tribe or Native Hawaiian organization that attaches religious and cultural significance to

12  properties described in subparagraph (A)." NHPA Section 106 provides as follows: "The head

13  of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally

14  assisted undertaking in any State and the head of any Federal department or independent agency

15  having authority to license any undertaking shall, prior to the approval of the expenditure of any

16  Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take

17  into account the effect of the undertaking on any district, site, building, structure, or object that

18  is included in or eligible for inclusion in the National Register.  The head of any such Federal

19  agency shall afford the Advisory Council on Historic Preservation established under Title II of

20  this Act a reasonable opportunity to comment with regard to such undertaking."

21      165.   Plaintiffs, both separately and collectively, attach religious and cultural

22  significance to the federal (public) land that will be affected by the Blythe Project.  This land

23  has traditional religious and cultural importance to Indian tribes and to Plaintiffs. Consequently,

24  Plaintiffs will be seriously harmed by Defendants' failure to comply with NHPA.

25      166.   Under *Amendment No. 1* (Exhibit "A"), Defendants were required to perform the

26  NHPA-prescribed consultations with Plaintiff LA CUNA.  Even in the absence of *Amendment

27  No. 1*, Defendants were required to perform the NHPA-prescribed consultations for the benefit

28  of Plaintiffs (among others).

1    167.   Defendants failed to perform the NHPA-prescribed consultations for the Blythe

2  Project.  Their failure in this regard was contrary to NHPA and arbitrary, capricious, an abuse

3  of discretion, or otherwise not in accordance with law as required by the APA.

4    168.   Plaintiffs, their respective members, and other members of the public have been

5  harmed as a result of Defendants' violations of NHPA and the APA because they have been

6  denied the benefits and protections provided by compliance with those laws.  By way of

7  example and without limitation, Plaintiff, its members, the public, and the decision-makers who

8  approved and are carrying out the Blythe Project were not fully informed about the traditional

9  religious and cultural importance attached by Plaintiffs and Indian tribes to the federal (public)

10  land that will be affected by the Blythe Project.

11                         **TWENTY-SEVENTH CLAIM:**
                **Violation of National Environmental Policy Act--Blythe Project**
12                **(Against All Defendants except Lee, Trost, and Goodro)**

13    169.   Paragraphs 1 through 168 are fully incorporated into this paragraph.

14    170.   NEPA requires every federal agency to prepare an environmental impact

15  statement ("EIS") for every major action significantly affecting the quality of the human

16  environment that the agency proposes to approve or carry out.  In general, the EIS must

17  adequately address (*i*) the proposed action's environmental impact, (*ii*) any adverse

18  environmental effects that cannot be avoided if the proposed action is implemented, (*iii*)

19  alternatives to the proposed action, (*iv*) the relationship between local short-term uses of the

20  environment and the maintenance and enhancement of long-term productivity, (*v*) any

21  irreversible and irretrievable commitments of resources that would be involved in the proposed

22  action if implemented, (*vi*) mitigation measures for the proposed action, and (*vii*) cumulative

23  impacts for the proposed action.

24    171.   Defendants have not prepared an adequate EIS for the Blythe Project even though

25  it is a major action proposed to be approved and carried out by at least one federal agency and

26  has the potential to affect the quality of the human environment, including but not limited to the

27  environment in the California Desert Conservation Area.

28

1    172.   Defendants' failure to prepare an adequate EIS for the Blythe Project was contrary

2   to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

3   law as required by the APA.

4    173.   Plaintiffs, their respective members, and other members of the public have been

5   harmed as a result of Defendants' violations of NEPA and the APA because they have been

6   denied the benefits and protections provided by compliance with those laws.  By way of

7   example and without limitation, Plaintiff, its members, the public, and the decision-makers who

8   approved and are carrying out the Project were not fully informed about the impacts of,

9   mitigation measures for, and alternatives to the Project prior to the decision to approve and carry

10   out the Project.

11                   **TWENTY-EIGHTH CLAIM:**
                 **Violation of National Environmental Policy Act--Blythe Project**
12                **(Against All Defendants except Lee, Trost, and Goodro)**

13    174.   Paragraphs 1 through 173 are fully incorporated into this paragraph.

14    175.   NEPA (under *Kleppe v. Sierra Club*, 427 U.S. 390 (1976)) requires the

15   environmental consequences of several proposals that will have cumulative or synergistic

16   environmental impacts upon a region to be considered together in a programmatic EIS.  Section

17   1502.4(b) of Title 40 of the Code of Federal Regulations provides that federal agencies "shall

18   prepare statements on broad actions so that they are relevant to policy and are timed to coincide

19   with meaningful points in agency planning and decisionmaking."

20    176.   Each of the Projects is a major federal action, and together they constitute broad

21   action by Defendants.

22    177.   Defendants did not prepare a programmatic EIS for the Projects.

23    178.   With regard to the Blythe Project, Defendants' failure to prepare a programmatic

24   EIS for the Projects was contrary to NEPA and arbitrary, capricious, an abuse of discretion, or

25   otherwise not in accordance with law as required by the APA.

26    179.   Plaintiffs, their respective members, and other members of the public have been

27   harmed as a result of Defendants' violations of NEPA and the APA because they have been

28   denied the benefits and protections provided by compliance with those laws.  By way of

1  example and without limitation, Plaintiff, its members, the public, and the decision-makers who

2  approved and are carrying out the Project were not fully informed about the programmatic

3  impacts of, mitigation measures for, and alternatives to the Projects prior to the decision to

4  approve and carry out the Blythe Project.

**TWENTY-NINTH CLAIM:**
**Violation of Federal Land Policy and Management Act--Blythe Project**
**(Against All Defendants except Lee, Trost, and Goodro)**

7      180.  Paragraphs 1 through 179 are fully incorporated into this paragraph.

8      181.  FLPMA Section 302(b) provides as follows: "In managing the public lands, the

9  Secretary shall, subject to this Act and other applicable law and under such terms and conditions

10  as are consistent with such law, regulate, through easements, permits, leases, licenses, published

11  rules, or other instruments as the Secretary deems appropriate, the use, occupancy, and

12  development of the public lands, including, but not limited to, long-term leases to permit

13  individuals to utilize public lands for habitation, cultivation, and the development of small trade

14  or manufacturing concerns: *Provided*, That unless otherwise provided for by law, the Secretary

15  may permit Federal departments and agencies to use, occupy, and develop public lands only

16  through rights-of-way under section 507 of this Act, withdrawals under section 204 of this Act,

17  and, where the proposed use and development are similar or closely related to the programs of

18  the Secretary for the public lands involved, cooperative agreements under subsection (b) of

19  section 307 of this Act: *Provided further*, That nothing in this Act shall be construed as

20  authorizing the Secretary concerned to require Federal permits to hunt and fish on public lands

21  or on lands in the National Forest System and adjacent waters or as enlarging or diminishing

22  the responsibility and authority of the States for management of fish and resident wildlife.

23  However, the Secretary concerned may designate areas of public land and of lands in the

24  National Forest System where, and establish periods when, no hunting or fishing will be

25  permitted for reasons of public safety, administration, or compliance with provisions of

26  applicable law. Except in emergencies, any regulations of the Secretary concerned relating to

27  hunting and fishing pursuant to this section shall be put into effect only after consultation with

28  the appropriate State fish and game department. Nothing in this Act shall modify or change any

1   provision of Federal law relating to migratory birds or to endangered or threatened species.

2   Except as provided in section 314, section 603, and subsection (f) of section 601 of this Act and

3   in the last sentence of this paragraph, no provision of this section or any other section of this Act

4   shall in any way amend the Mining Law of 1872 or impair the rights of any locators or claims

5   under that Act, including, but not limited to, rights of ingress and egress.  In managing the

6   public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent

7   unnecessary or undue degradation of the lands."

8       182.   FLPMA Section 601(d) provides as follows: "The Secretary [of the Interior], in

9   accordance with section 202 of this Act, shall prepare and implement a comprehensive, long-

10  range plan for the management, use, development, and protection of the public lands within the

11  California Desert Conservation Area. Such plan shall take into account the principles of

12  multiple use and sustained yield in providing for resource use and development, including, but

13  not limited to, maintenance of environmental quality, rights-of-way, and mineral development.

14  Such plan shall be completed and implementation there-of initiated on or before September 30,

15  1980."

16      183.   FLPMA Section 601(f) provides as follows: "Subject to valid existing rights,

17  nothing in this Act shall affect the applicability of the United States mining laws on the public

18  lands within the California Desert Conservation Area, except that all mining claims located on

19  public lands within the California Desert Conservation Area shall be subject to such reasonable

20  regulations as the Secretary may prescribe to effectuate the purposes of this section. Any patent

21  issued on any such mining claim shall recite this limitation and continue to be subject to such

22  regulations. Such regulations shall provide for such measures as may be reason-able to protect

23  the scenic, scientific, and environmental values of the public lands of the California Desert

24  Conservation Area against undue impairment, and to assure against pollution of the streams and

25  waters within the California Desert Conservation Area."

26      184.   Defendants have not complied with FLPMA as it relates to the Blythe Project

27  even though it is located on federal (public) land and is within the California Desert

28  Conservation Area and subject to the CDCA Plan.

1      185.   Defendants' failure to comply with the CDCA Plan and take all action necessary

2  to prevent unnecessary or undue degradation of the federal (public) land affected when they

3  approved the Blythe Project was contrary to FLPMA and arbitrary, capricious, an abuse of

4  discretion, or otherwise not in accordance with law as required by the APA.

5      186.   Plaintiffs, their respective members, and other members of the public have been

6  harmed as a result of Defendants' violations of FLPMA and the APA because they have been

7  denied the benefits and protections provided by compliance with those laws.  By way of

8  example and without limitation, Plaintiff, its members, and the public will have to endure

9  unnecessary or undue degradation of the federal (public) land affected by the Blythe Project and

10  will lose the protections provided for this land by the CDCA Plan.

11
### THIRTIETH CLAIM:
**Violation of Native American Graves Protection & Repatriation Act--Blythe Project**
12      **(Against All Defendants except Lee, Trost, and Goodro)**

13      187.   Paragraphs 1 through 186 are fully incorporated into this paragraph.

14      188.   Section 3(b) of the NAGPRA provides as follows: "Native American cultural

15  items not claimed under subsection (a) of this section shall be disposed of in accordance with

16  regulations promulgated by the Secretary [of the Interior] in consultation with the review

17  committee established under section [8] of this [Act], Native American groups, representatives

18  of museums and the scientific community."

19      189.   Section 3(c) of the NAGPRA provides as follows: "The intentional removal from

20  or excavation of Native American cultural items from Federal or tribal lands for purposes of

21  discovery, study, or removal of such items is permitted only if--

22        "(1) such items are excavated or removed pursuant to a permit issued

23        under section 470cc of Title 16 [of the U.S. Code] which shall be consistent with

24        this [Act];

25        "(2) such items are excavated or removed after consultation with or, in the

26        case of tribal lands, consent of the appropriate (if any) Indian tribe or Native

27        Hawaiian organization;

28

1        "(3) the ownership and right of control of the disposition of such items

2      shall be as provided in subsections (a) and (b) of this section; and

3        "(4) proof of consultation or consent under paragraph (2) is

4      shown."

5     190.   Defendants' approval of the Blythe Project will result in the intentional

6  excavation, disposal, or other removal of Native American cultural items (including human

7  remains) known to be or strongly suspected of being on the site of the Project without

8  compliance with the conditions necessary for excavation, disposal, or other removal. By way

9  of example and not limitation, Defendants have not consulted with or obtained the consent of

10  the Indian tribe whose cultural remains or located on the site of the Project.

11     191.   Defendants' failure to consult with and obtain the consent of the appropriate

12  Indian tribe prior to excavating, disposing of, or otherwise removing Native American cultural

13  items (including human remains) known to be or strongly suspected of being on the site of the

14  Blythe Project was contrary to the NAGPRA and arbitrary, capricious, an abuse of discretion,

15  or otherwise not in accordance with law as required by the APA.

16     192.   Plaintiffs, their respective members, and other members of the public have been

17  harmed as a result of Defendants' violations of the NAGPRA and the APA because they have

18  been denied the benefits and protections provided by compliance with those laws. By way of

19  example and without limitation, Plaintiff, its members, and the public (including the appropriate

20  Indian tribe) will have to endure the excavation, disposal, or other removal of Native American

21  cultural items (including human remains) located on the site of the Blythe Project without the

22  necessary consultation and consent prior to Defendants' approval of the Project.

23

24

25

26                [This space is intentionally blank.]

27

28

**PRAYER FOR RELIEF**

FOR ALL THESE REASONS, Plaintiffs respectfully pray for the following relief, conjunctively or disjunctively as the Court determines to be appropriate, against Defendants (and any and all other parties who may oppose Plaintiff in this proceeding):

A.    On the First, Sixth, Eleventh, Sixteenth, Twenty-First, and Twenty-Sixth Claims:

1.    For each of the Projects, a judgment or other final order determining or declaring that Defendants failed to comply fully with the NHPA and the APA as they relate to the Project (including all associated entitlements and leases) and that the Project's approval was illegal in at least one respect, rendering the approval null and void;

2.    For each of the Projects, a judgment or other final order determining or declaring that Defendants must fully comply with the NHPA and the APA before final approval of the Project may be granted; and

3.    For each of the Projects, injunctive relief prohibiting Defendants (and any and all persons acting at the request of, in concert with, for the benefit of, in privity with, or under one or more of them) from taking any action on any aspect of, in furtherance of, or otherwise based on the Project unless and until Defendants fully comply with all applicable provisions of the NHPA and the APA, as determined by the Court.

B.    On the Second, Third, Seventh, Eighth, Twelfth, Thirteenth, Seventeenth, Eighteenth, Twenty-Second, Twenty-Third, Twenty-Seventh, and Twenty-Eighth Claims:

1.    For each of the Projects, a judgment or other final order determining or declaring that Defendants failed to comply fully with NEPA and the APA as they relate to the Project (including all associated entitlements and leases) and that the Project's approval was illegal in at least one respect, rendering the approval null and void;

2.    For each of the Projects, a judgment or other final order determining or declaring that Defendants must prepare an EIS for the Project fully in accordance with NEPA and the APA before final approval of the Project may be granted; and

3.    For each of the Projects, injunctive relief prohibiting Defendants (and any and all persons acting at the request of, in concert with, for the benefit of, in privity with, or

1 under one or more of them) from taking any action on any aspect of, in furtherance of, or

2 otherwise based on the Project unless and until Defendants fully comply with all applicable

3 provisions of NEPA and the APA, as determined by the Court. .

4       C.     On the Fourth, Ninth, Fourteenth, Nineteenth, Twenty-Fourth, and Twenty-Ninth

5 Claims:

6            1.     For each of the Projects, a judgment or other final order determining or

7 declaring that Defendants failed to comply fully with FLPMA and the APA as they relate to the

8 Project (including all associated entitlements and leases) and that the Project's approval was

9 illegal in at least one respect, rendering the approval null and void;

10            2.     For each of the Projects, a judgment or other final order determining or

11 declaring that Defendants must fully comply with FLPMA and the APA before final approval

12 of the Project may be granted; and

13            3.     For each of the Projects, injunctive relief prohibiting Defendants (and any

14 and all persons acting at the request of, in concert with, for the benefit of, in privity with, or

15 under one or more of them) from taking any action on any aspect of, in furtherance of, or

16 otherwise based on the Project unless and until Defendants fully comply with all applicable

17 provisions of FLPMA and the APA, as determined by the Court.

18       D.     On the Fifth, Tenth, Fifteenth, Twentieth, Twenty-Fifth, and Thirtieth Claims:

19            1.     For each of the Projects, a judgment or other final order determining or

20 declaring that Defendants failed to comply fully with the NAGPRA and the APA as they relate

21 to the Project (including all associated entitlements and leases) and that the Project's approval

22 was illegal in at least one respect, rendering the approval null and void;

23            2.     For each of the Projects, a judgment or other final order determining or

24 declaring that Defendants must fully comply with the NAGPRA and the APA before final

25 approval of the Project may be granted; and

26            3.     For each of the Projects, injunctive relief prohibiting Defendants (and any

27 and all persons acting at the request of, in concert with, for the benefit of, in privity with, or

28 under one or more of them) from taking any action on any aspect of, in furtherance of, or

1   otherwise based on the Project unless and until Defendants fully comply with all applicable

2   provisions of the NAGPRA and the APA, as determined by the Court.

3        E.     All legal fees and other expenses incurred in connection with this proceeding,

4   including but not limited to reasonable attorney fees as authorized by law; and

5        F.     Any and all further relief that this Court may deem appropriate.

6        Date: December 27, 2010.     Respectfully submitted,

7        BRIGGS LAW CORPORATION

8

9        By:

10       Cory J. Briggs

11       Attorneys for Plaintiffs La Cuna de Aztlan Sacred
    Sites Protection Circle Advisory Committee,
12  CAlifornians for Renewable Energy, Alfredo Acosta
    Figueroa, Phillip Smith, Patricia Figueroa, Ronald
13  Van Fleet, and Catherine Ohrin-Greipp

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS
RELIEF UNDER THE ADMINISTRATIVE PROCEDURES ACT, THE
NATIONAL HISTORIC PRESERVATION ACT, THE NATIONAL
ENVIRONMENTAL POLICY ACT, THE FEDERAL LAND POLICY AND
MANAGEMENT ACT, AND THE NATIVE AMERICAN GRAVES
PROTECTION AND REPATRIATION ACT**

Exhibit "A"

**Amendment No. 1 to Memorandum of Understanding**
**Between**
**United States Department of the Interior**
**Bureau of Land Management**
**and the**
**Southern Low Desert Resource Conservation and Development Council**

This Amendment No. 1 modifies the current Memorandum of Understanding (MOU) that was signed by the Bureau of Land Management (BLM) and the Southern Low Desert Resource Conservation and Development Council (Council) in July 2006 to include the La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee (LCASSPC) and the Blythe Area Chamber of Commerce and Tourist Information Center (Chamber) in the partnership for protection of cultural resources in the BLM Yuma Field Office planning area.

Section "II. Definitions" is amended as follows:

A. BLM: The Bureau of Land Management's Yuma Field Office, which has management responsibility for the public land area covered under this MOU.

B. Council: The Southern Low Desert Resource Conservation and Development Council (a 501(c)(3) non-profit / non-governmental conservation and community development organization).

C. LCASSPC: La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee. A 501(c)(3) nonprofit organization that is comprised of 15 indigenous and culturally aware individuals who are dedicated to physically protecting the Blythe Giant Intaglios, other geoglyphs, and several hundred sacred sites that are located along the Colorado River from Needles, California, to Yuma, Arizona.

D. Chamber: The Blythe Area Chamber of Commerce and Tourist Information Center. Provides information to visitors and the community about the Blythe Intaglios and other important cultural resources in the vicinity of Blythe, California.

E. MOU signatories: Refers to all agencies and organizations that have a formalized partnership through the July 2006 MOU and associated amendments.

Section "III. Statement of MOU Purpose" is amended as follows:

This Memorandum of Understanding (MOU) will provide a means for the ~~BLM the Council~~ MOU signatories to work in partnership to enhance cultural resources protection, conservation, and interpretation efforts on BLM lands within the Yuma Field Office's jurisdiction and the Southern Low Desert RC&D area. The purpose of this MOU is to assist the BLM with its responsibilities under Section 110 of the National Historic Preservation Act of 1966, as amended.

The ~~BLM, and the Council~~ MOU signatories agree that all projects conducted under this MOU will be carried out by qualified specialists. Contractors hired for projects must meet

BLM standards. Projects that may be conducted under this MOU include but are not limited to cultural resources survey, archaeological site recordation, National Register of Historic Places nominations, ethnographic studies with interested Native American tribes, design and installation of site protection and interpretation measures, and the production of interpretive materials for the public. All projects will be coordinated with and approved by the BLM.

The ~~BLM and the Council~~ MOU signatories have a common objective of helping to bring about the conservation, development, and wise use of archaeological and historical resources in the southeastern California desert area. Therefore, ~~both the BLM and the Council~~ the MOU signatories deem this effort of mutual benefit to ~~both~~ all parties. We hereby agree as follows:

    A.  The Council agrees to:

        1.  Work cooperatively with BLM to coordinate and facilitate the development of plans for the conservation, protection, and interpretation of desert resources. Specifically, the Council agrees to diligently work towards the immediate and future protection of cultural resources, including the Blythe Intaglios, for the public good.

        2.  Assist with any environmental documents deemed necessary for the completion of joint projects within the mutual boundary of the Council and BLM.

        3.  Provide a public outreach program to encourage and promote active public participation in the protection of desert resources.

        4.  Assist in the solicitation of funds from outside organizations and agencies to complete agreed upon projects or work items within the mutual boundaries of the BLM and the Council.

    <u>B.  LCASSPC agrees to:</u>

        <u>1.  Work cooperatively with BLM to coordinate and facilitate the development of plans for the conservation, protection, and interpretation of desert resources and sacred sites. Specifically LCASSPC agrees to diligently work toward the immediate and future protection of cultural resources, including the Blythe Intaglios, for the good of the future generations and the public good.</u>

        <u>2.  Assist with any environmental documents deemed necessary for the completion of joint projects.</u>

        <u>3.  Provide a public outreach program to encourage and promote active public participation in the protection of desert resources.</u>

        <u>4.  Assist in the solicitation of funds from outside organizations and agencies to complete agree upon projects or work items.</u>

C.  The Chamber agrees to:

1.  Work cooperatively with BLM to coordinate and facilitate the development of plans for the conservation, protection, and interpretation of desert resources. Specifically, the Chamber agrees to diligently work toward the immediate and future protection of cultural resources, including the Blythe Intaglios, for the public good.

2.  Provide a public outreach program to encourage and promote active public participation in the protection of desert resources.

3.  Assist in the solicitation of funds from outside organizations and agencies to complete agreed upon projects or work items.

D.  BLM agrees to:

1.  Work cooperatively ~~with the Council~~ on projects of mutual benefit to ~~BLM and the Council~~ the MOU signatories.

2.  Provide technical and planning assistance for projects of mutual benefit to the ~~BLM and the Council~~ MOU signatories.

3.  Initiate any environmental assessment documents deemed necessary for the completion of any agreed upon joint projects ~~within the mutual boundaries of the BLM and the Council~~.

4.  Assist with the preparation of statements of work and hiring of contractors to complete the agreed upon projects.

5.  Cooperate and assist (when appropriate) with seeking funds to complete agreed upon joint projects.


Section "IV.  Terms of the MOU" is amended as follows:

A.  The following individuals are designated as the liaison between the ~~BLM and the Council~~ MOU signatories.

1.  Bureau of Land Management
Yuma Field Office
~~Rebecca Helck~~ James T. Shoaff, Field Manager
2555 E Gila Ridge Road
Yuma, AZ 85365
PH:  (928) 317-3200
FX:  928-317-3250

2.  Southern Low Desert Resource Conservation & Development Council
Thomas Burgin, President
53990 Enterprise Way, 6B .

Coachella, CA 92236
PH: 760-391-9002
FX: 760-391-9813

3. La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee
Alfredo A. Figueroa
Escuela de la Raza Unida
137 N. Broadway
Blythe, CA 92225
PH: (760) 922-6442
E-mail: lacunadeaztlan@aol.com

4. Blythe Area Chamber of Commerce and Tourist Information Center
Jim Shipley, COO
201 S Broadway
Blythe, CA 92225
PH: 760-922-8166
FX: 760-922-4010
E-mail: blythecoc@yahoo.com

B. Nothing herein is intended to conflict with existing BLM, Department of the Interior orders, or Council directives. If any terms or conditions of this MOU are inconsistent with existing BLM orders or Council directives, those portions of this MOU are invalid.

By signing below, the partners show their agreement to MOU Amendment No. 1 as described in this document.

Thomas Burgin, President of the Southern Low Desert Resource Conservation and Development Council.

Signed: _____     Date MAR. 6, 2008

Alfredo Figueroa, La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee.

Signed _Alfredo Figueroa_     Date _Feb. 15, 2008_

Jim Shipley, Blythe Area Chamber of Commerce and Tourist Information Center.

Signed: _____     Date _FEB 29, 2008_

James T. Shoaff, Field Manager of the Bureau of Land Management Yuma Field Office.

Signed: _____     Date _March 14, 2008_

Page 4 of 4

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS
RELIEF UNDER THE ADMINISTRATIVE PROCEDURES ACT, THE
NATIONAL HISTORIC PRESERVATION ACT, THE NATIONAL
ENVIRONMENTAL POLICY ACT, THE FEDERAL LAND POLICY AND
MANAGEMENT ACT, AND THE NATIVE AMERICAN GRAVES
PROTECTION AND REPATRIATION ACT**

Exhibit "B"

# Amending Land Use Plans with Programmatic EISs

BLM 2009 National Land Use Planning Conference
"Keeping Pace with Change"

# Session Overview

- ○ Programmatic EISs and Tiering (S. Stewart)

- ○ BLM Programmatic EISs (S. Stewart)

- ○ Programmatic EISs Lessons Learned (K. Winthrop)

- ○ Programmatic vs. Site–Specific EISs (I. Hlohowskyj)



# What is a Programmatic EIS (PEIS)?

▶ EIS – CEQ regulations do not define the term "Programmatic Analyses" separately.

▶ 40 CFR 1502.4(b) – EISs may be prepared for broad Federal actions such as the adoption of new agency programs or regulations.

▶ 40 CFR 1502.4(c) – When preparing statements on broad actions agencies may find it useful to evaluate proposals in one of the following ways:

   · Geographically, actions occurring in the same general location
   · Generically, actions that have relevant similarities
   · By stage of technological development

# Types of Actions that PEISs Support

- **Adopting Official Policy**
  - National–level rulemaking
  - Adoption of agency–wide policy

- **Adopting Formal Plan**
  - Adoption of an agency plan for a group of related projects

- **Adopting Agency Program**
  - A new agency mission or initiative
  - Redesign of existing programs

- **Approving Site–Wide or Area–Wide Actions**
  - Similar actions in a region
  - Multiple actions that share a common geography or timing

# PEISs Generally...

- Used for broad geographic areas

- Assess impacts across a span of conditions (facilities, geographic regions or multi–project programs)

- Emphasize cumulative impacts

- Emphasize policy level alternatives

- Emphasize program level mitigation measures and BMPs

- Do not define facilities or specific sites

- Tend to be more generic and conceptual than project–specific EISs



# Tiering

- In cases where a broad policy, plan, program or project will later be translated into site–specific projects, subsequent analyses are referred to as "tiered" analyses.

- 40 CFR 1508.28 – "Tiering" refers to the coverage of general matters in a broader EIS with subsequent narrower EISs or EAs incorporating by reference the general discussions and concentrating solely on the issues specific to the statement subsequently prepared.

# Benefits of PEISs and Tiering

- Focus on issues ripe for decision at each level of environmental review (40 CFR 1502.20)

- Opportunity to evaluate potential cumulative impacts of the reasonably foreseeable actions under a program (40 CFR 1502.4(c))

- Reduce paperwork (40 CFR 1500.4)

- Reduce delay (40 CFR 1500.5)

- Opportunity to prepare EA/FONSI for individual actions when there are no new significant impacts (NEPA Handbook 5.2.2)

# PEIS Challenges

- Scope
- Content
- Specificity of Analysis
- Alternatives
- Addressing Deferred Issues
- Handling Proposals while Preparing a PEIS

# Examples of BLM PEISs

| Name | Action | Agency | Status |
|------|--------|--------|--------|
| **Wind Energy**<br>AZ, CA, CO, ID, MT, NV, NM, OR, UT, WA, WY | Amend 52 land use plans to identify lands suitable for wind energy development ROW applications (no plans amended in AZ or CA). | BLM | ROD signed December, 2005 |
| **Oil Shale and Tar Sands**<br>CO, UT, WY | Amend 10 land use plans to allocate lands suitable for consideration of leasing proposals. | BLM | ROD signed November, 2008 |
| **Geothermal Leasing**<br>AK, AZ, CA, CO, ID, MT, NV, NM, OR, UT, WA, WY | Amend 114 land use plans to identify lands as open or closed to geothermal leasing and to adopt stipulations, BMPs and procedures for leasing. | BLM, FS | ROD signed December, 2008 |
| **West-Wide Energy Corridors**<br>AZ, CA, CO, ID, MT, NV, NM, OR, UT, WA, WY | Amend 130 land use plans to designate energy transport corridors on federal lands suitable for proposed pipeline and transmission line ROW applications. | BLM, FS, DOD, DOE, FWS, NPS | RODs signed January, 2009 (BLM, FS) |
| **Solar Energy Development**<br>AZ, CA, CO, NM, NV, UT | Goal is to amend land use plans to identify lands suitable for solar energy development ROW applications. | BLM | Draft PEIS scheduled for Summer, 2009 |

# BLM PEIS Decisions

▸ Allocate lands as open or closed to leasing or right–of way authorizations; designate energy transport corridors

▸ Develop a reasonably foreseeable development scenario

▸ Adopt stipulations, BMPs, mitigation measures and Interagency operating procedures applicable to future projects

▸ Adopt standard processes and procedures for leasing or right–of way authorizations

▸ Amend BLM land use plans to adopt all of the above

# BLM PEIS Implementation

- PEIS's do not authorize any on–the–ground activities or waive environmental review for subsequent individual actions.

- All future development projects must be in conformance with the existing land use plan as amended.

  ○ Land use plan amendments via a PEIS adopt the resource allocations, reasonably foreseeable development scenario, stipulations, BMPs and procedures.

- Site–specific concerns and the development of additional mitigation measures will be addressed in project–level reviews tiered to the analysis in the PEIS.

**ORIGINAL**

**JS 44** (Rev. 12/07)                                    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee et al. | United States Department of the Interior  10 DEC 27 AM 11: 10 |

| (b)  County of Residence of First Listed Plaintiff **San Diego** | County of Residence of First Listed Defendant  DISTRICT COURT |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) CALIFORNIA |
|  | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.   BY _____ DEPUTY |

| (c)  Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known)      **WVG** |
|---|---|
| Briggs Law Corporation, 99 East "C" Street, Suite 111, Upland, CA | **10 CV 2664 WQH** |

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane  **PERSONAL INJURY** | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product  ☐ 362 Personal Injury - | ☐ 625 Drug Related Seizure | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability      Med. Malpractice | of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &  ☐ 365 Personal Injury - | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander      Product Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'  ☐ 368 Asbestos Personal | ☐ 650 Airline Regs. | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability      Injury Product | ☐ 660 Occupational | | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine      Liability | Safety/Health | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product  **PERSONAL PROPERTY** | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability    ☐ 370 Other Fraud | **LABOR** | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 380 Other Personal | Act | ☐ 864 SSID Title XVI | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability      Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal  ☐ 385 Property Damage | ☐ 730 Labor/Mgmt.Reporting | **FEDERAL TAX SUITS** | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury      Product Liability | & Disclosure Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | or Defendant) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting  **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment  ☐ 510 Motions to Vacate | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/      Sentence | Security Act | | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations   **Habeas Corpus:** | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare  ☐ 530 General | | **IMMIGRATION** | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -  ☐ 535 Death Penalty | | ☐ 462 Naturalization Application | Under Equal Access |
| | Employment    ☐ 540 Mandamus & Other | | ☐ 463 Habeas Corpus - | to Justice |
| | ☐ 446 Amer. w/Disabilities -  ☐ 550 Civil Rights | | Alien Detainee | ☐ 950 Constitutionality of |
| | Other    ☐ 555 Prison Condition | | ☐ 465 Other Immigration | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
16 U.S.C. 470 et. seq.; 42 U.S.C. 4321 et. seq.; 43 U.S.C. 1701 et. seq.; 25 U.S.C. 3001 et. seq.

Brief description of cause:
Declaratory, Injunctive and Mandamus Relief

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes  ☒ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instructions): | JUDGE  Larry A. Burns | DOCKET NUMBER  10cv2241-LAB (CAB) |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 12/27/2010 | |

**FOR OFFICE USE ONLY**

RECEIPT # 21574    AMOUNT $ 350.00    APPLYING IFP NS    JUDGE _____    MAG. JUDGE _____

12-27-10



```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS021574
Cashier ID: nsiefken
Transaction Date: 12/27/2010
Payer Name: BRIGGS LAW CORP
-----------------------------------
CIVIL FILING FEE
 For: LA CUNA DE AZTLAN V US DEPARTM
 Case/Party: D-CAS-3-10-CV-002664-001
 Amount:        $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 60414
 Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```